[No. 6418. Decided November 5, 1906.]

JAMES J. ANDERSON et al., Plaintiffs and Appellants, v. C. A. SNOWDEN et al., Defendants and Respondents.[1]

TENANCY IN COMMON—CONTRACT TO PURCHASE LAND—EXPIRATION OF TIME LIMIT—FORFEITURE—NOTICE TO COTENANT. Where two parties enter into an agreement to purchase certain land, each to furnish one-half of the purchase price, their rights must be determined under the rules relating to joint owners or tenants in common; and one party cannot, upon failure of the other to furnish his part of the purchase price within the required time, demand payment and declare a forfeiture and claim full title upon paying the whole sum due on the unpaid purchase price.

SAME—QUIETING TITLE—TENDER OF AMOUNT DUE—ACTION AGAINST COTENANT. In such a case the party in default is not entitled to a decree quieting title and declaring him to be the owner of a one-half interest, without first tendering his share of the purchase price, for which sum the other party has a lien upon the land.

Cross-appeals from a judgment of the superior court for Pierce county, Chapman, J., entered April 18, 1906, after a trial on the merits before the court without a jury, dismissing an action to quiet title without granting relief to either party. Reversed.

Hudson & Holt and H. P. Burdick, for appellants, contended, inter alia, that though there has been a partial performance by one party, if he fails in a substantial way to carry out the balance of the contract, the other party may rescind, if he can place him in statu quo. Luey v. Bundy, 9 N. H.

[1]Reported in 87 Pac. 356.

298, 32 Am. Dec. 359; *Kirby v. Harrison*, 2 Ohio St. 326, 59 Am. Dec. 677. As a general proposition Anderson had the right to rescind the contract when Snowden failed and refused to perform. *Drake v. Goree*, 22 Ala. 409; *De Peyster v. Pulzer*, 3 Barb. 284; *Tinsley v. Foster* (Tex. Civ. App.), 25 S. W. 298; *Commercial Bank v. Weldon*, 148 Cal. 601, 84 Pac. 171; *McMullen v. Hoffman*, 75 Fed. 547. Where the respective rights of joint tenants are contingent upon certain payments, and one fails and neglects to make payment of his part, his cotenant may, after notice, make payment of the whole and take title to the exclusion of the delinquent. *Mandeville v. Solomon*, 39 Cal. 125; *Stoll v. Griffith*, 41 Wash. 37, 82 Pac. 1025; *Niday v. Cochran* (Tex. Civ. App.), 93 S. W. 1027; *Stubblefield v. Hanson* (Tex. Civ. App.), 94 S. W. 406; *Wright v. Sperry*, 21 Wis.* 331. Where a purchaser of goods has knowledge of his own inability to pay for them, his intention not to pay must be presumed. *Talcott v. Henderson*, 31 Ohio St. 162, 27 Am. Rep. 501. Even a conditional sale contract vests such title in the community as to require the wife's signature to an assignment of the interest. *Zeimantz v. Blake*, 39 Wash. 6, 80 Pac. 822. The deeds were absolute conveyances, and not mortgages. 20 Am. & Eng. Ency. Law (2d ed.), 940; *McNamara v. Culver*, 22 Kan. 661; *Plummer v. Ilse*, 41 Wash. 5, 82 Pac. 1009.

*Fogg & Fogg*, for respondents, contended, among other things, that a joint tenant or joint owner of land cannot take up or pay off an encumbrance for which both are liable on the joint property, and thereby exclude his co-owner from any further interest in the land. *Burnett v. Ewing*, 39 Wash. 45, 80 Pac. 855; Freeman, Co-Tenancy and Partition, § 154; *Cedar Canyon etc. Min. Co. v. Yarwood*, 27 Wash. 271, 67 Pac. 749; *Stoll v. Griffith*, 41 Wash. 37, 82 Pac. 1025. The conveyances to Cushman, Wright and Johnson being made as security only were in legal effect mortgages only, and created only liens on the property, and would have re-

quircd a foreclosure in the regular way in order to terminate the interests of Snowden and Anderson in the land. *Mears v. Strobach*, 12 Wash. 61, 40 Pac. 621; *Snyder v. Parker*, 19 Wash. 276, 53 Pac. 59, 67 Am. St. 726. Plaintiff's remedy was to pay off the common encumbrance on the common property, and then enforce his resulting equitable lien on Snowden's interest in the lands for the amount due from him. 3 Pomeroy, Equity Jurisp. (3d ed.), § 1220; *Calkins v. Steinbach*, 66 Cal. 117, 4 Pac. 1103; *Moon v. Jennings*, 119 Ind. 130, 20 N. E. 748, 21 N. E. 471, 12 Am. St. 383; *Titsworth v. Stout*, 49 Ill. 78, 95 Am. Dec. 577; *McLaughlin v. Estate of Curts*, 27 Wis. 644. The conduct of plaintiff's wife must be held to be a ratification of the arrangement between her husband and Snowden. *Peterson v. Hicks*, 43 Wash. 412, 86 Pac. 634. The court having acquired jurisdiction of the parties and of the subject-matter of the action, should have entered a decree that would have been a complete adjudication and settlement of all disputes between the parties relative to the subject-matter of the suit. 1 Pomeroy, Equity Jurisp. (3d ed.), § 242; *Jordan v. Coulter*, 30 Wash. 116, 70 Pac. 257; *Lawrence v. Halverson*, 41 Wash. 534, 83 Pac. 889; *McKay v. Calderwood*, 37 Wash. 194, 79 Pac. 629; *Calkins v. Steinbach*, *supra*.

RUDKIN, J.—This is an action to quiet title. The material facts occurring prior to the 5th day of December, 1904, are recited and embodied in a written memorandum of that date, prepared by the plaintiff James J. Anderson, and signed by him and the defendant C. A. Snowden. The memorandum is as follows:

"This memorandum witnesseth, that, heretofore, in the month of September, 1904, the undersigned entered into three contracts of purchase of thirty-two acres of land, being all of the N. E. quarter of S. E. quarter, Section Two, Township 20, North, Range 3 East of W. M., excepting a strip of eight acres off the east side of said forty acre tract. belonging to James Alexander, from James Brewer, David

Brewer and Louisa Jackson, the whole purchase price of said thirty-two acres to be $4,800.

"That towards the purchase price of said lands the undersigned C. A. Snowden furnished the sum of Two Hundred Dollars in cash, and has further paid the sum of Seven Dollars as interest upon one of the notes hereinafter mentioned.

"That the undersigned James J. Anderson has paid towards the purchase price of said lands the sum of One Hundred Dollars in cash and has further paid on account of said lands the following sums: For abstract of title, $12.50; for surveying, $6.00; for recording contracts and deeds, $6.50; for interest on notes hereinafter mentioned, $19.00.

"That the undersigned have borrowed from the Pacific National Bank $650, evidenced by two notes, one being for $350.00 and one being for $300.00, the proceeds of which notes were paid on account of said lands.

"That in order to complete the purchase of said lands the undersigned obtained from E. E. Cushman the sum of $1,450 and as security for same, had a portion of said lands deeded to said E. E. Cushman, taking back from said Cushman a contract for the reconveyance of said portion of said lands upon payment to him of $1,812.50; and also obtained from George P. Wright and Mrs. Mary Johnson the sum of $2,400, and had a portion of said lands deeded to said Mrs. Johnson and said George P. Wright as security for same, taking back from said Mrs. Johnson and Geo. P. Wright a contract for reconveyance of said lands on payment to them of $3,000.

"That the undersigned, C. A. Snowden and James J. Anderson, have each an equal share in the contracts for reconveyance of said lands by said Cushman, Wright and Johnson, subject to the contribution and payment by each of one-half of all moneys heretofore paid or to be paid on account of the purchase of said lands, the intention being that they shall each bear an equal share of the sums above mentioned as having been paid out, and an equal share of amounts to be paid in satisfaction of said notes when same are to be paid, the various sums so paid out to be adjusted between them that each shall bear an equal part of the same in the aggregate.

"That the said contracts of reconveyance have been made in the name of James J. Anderson for convenience, this

memorandum being made to evidence the fact that said C. A. Snowden has an equal share in same on the conditions above stated.

"Dated, December 5th, 1904　　　　　' Jas. J. Anderson.
"Made in duplicate.　　　　　　　　C. A. Snowden."

Some time thereafter, and prior to the 1st day of September, 1905, Anderson paid to the Pacific National Bank the two promissory notes referred to in the memorandum, and on the latter date served on the defendant Snowden the following written notice:

"Tacoma, Washington, September 1st, 1905.
"Mr. C. A. Snowden, Dear Sir:　Referring to a certain written memorandum or agreement signed by you and myself, of date December 5th, 1904, with regard to a certain option or contract with George P. Wright and Mrs. Mary Johnson, and also with regard to a similar contract with E. E. Cushman, I write this to notify you that the time limit under the contract with George P. Wright and Mrs. Mary Johnson expires today, September 1st, 1905; and to further notify you that the amount necessary to be paid by you in order to protect any right or interest that you may have under or in said contract, is the sum of Sixteen Hundred and Ninety Dollars ($1,690.00), which said sum you are hereby notified to contribute towards the payment to said George P. Wright and Mrs. Mary Johnson, according to said contract with them, on this day; and in case of your failure to contribute said sum on this day for said purpose, any and all right or interest that you may have in or to said contract will be at once forfeited.

"Further referring to contract with E. E. Cushman mentioned in said agreement between you and myself, I notify you that the time limit for the performance of said contract with Mr. Cushman has been extended to and including October 1st, 1905; and further, that the amount necessary to be paid by you on or before that date in order to protect any right or interest that you may have in or to said contract with Mr. Cushman, is the sum of Ten Hundred and Thirty-six and 25-100 Dollars ($1036.25); and in case of your failure to contribute said sum towards the payment to said Cushman on or before October 1st, 1905, according to the terms of

said contract, all right or interest that you may have in or to same will at once be forfeited.

"You are further notified that in case of your failure to meet your portion of the amount necessary to complete the payments under the said option contracts or either of them as above set forth, and in case I shall elect to and do, at my own cost and expense, make said payments or either of them, I shall then refuse to recognize any claim that you or any one claiming through you, may make under and by virtue of said agreement between you and myself as to the land so purchased by me. This notice is given in order to give you every opportunity to protect any rights that you may have in the matters referred to should you see fit to do so.

"Yours very truly, Jas. J. Anderson."

Snowden failed to comply with the requirements of the notice, and thereupon Anderson paid the several amounts due Cushman and Wright and Johnson, and took from them conveyances of the property referred to in the memorandum. Since the service of this notice and the payments to Cushman, Wright and Johnson, Anderson has refused to recognize Snowden as having any interest in the property, and on November 15, 1905, brought the present action to quiet title.

On the foregoing facts, the plaintiffs contend that the defendants have forfeited any and all interest they may have had in the property, by failure to pay their portion of the purchase price. The defendants, on the other hand, have filed a cross-complaint, and ask that they be declared the owners of an undivided one-half interest in the property, subject to the payment of their portion of the purchase price. The court below found the facts substantially as above set forth, and dismissed the action, without granting any relief to either party. From this judgment, both parties have appealed, and will hereafter be referred to as designated in the court below.

The plaintiffs contend, if we understand them correctly, that the relationship existing between themselves and the de-

fendants was that of vendors and purchasers, and that by failure to pay the purchase price on demand, the defendants forfeited all rights under their contract. If their premise is correct, the conclusion might follow; but we think this is a mistaken idea as to the relationship created and existing between the parties. There is no more reason for holding that the defendants acquired their rights by purchase from the plaintiffs, than for holding that the plaintiffs acquired their rights by purchase from the defendants. Under the testimony, the findings of the court, and more especially the written memorandum prepared by one of the plaintiffs, the parties to this action were joint purchasers, or tenants in common, and their rights and obligations must be determined by the law governing that relation rather than the law applicable to the relation of vendor and purchaser. Their common property was held under deeds to secure a common indebtedness. Each tenant in common was a surety for the other. The only remedy of either was to pay the common indebtedness, and be subrogated to the rights of the creditors against the common property. The remedy of the plaintiffs was by contribution and not by forfeiture. One tenant in common cannot forfeit the rights of his cotenant in their common property by notice or demand. The claim of the defendants does not appeal very strongly to a court of equity, and it may well be that they are endeavoring to speculate on the capital of others, but this was one of the incidents of the bargain the plaintiffs entered into, against which a court can grant no relief. As said by the court in *Calkins v. Steinbach*, 66 Cal. 117, 4 Pac. 1103,

"The conduct of the defendant, Steinbach, as evidenced by his answer, does not commend itself to a court of equity, but it has not worked a forfeiture of any of his interest in the lands in question. He is bound to the plaintiff for such proportion of the redemption money, with interest, as his interest in the lands bears to the whole thereof; and as security for payment of such sum, plaintiff holds an equitable lien

upon all of the interest of Steinbach in the property. To enforce the relative rights and obligations of the respective parties, it is necessary that this amount be judicially ascertained, a day fixed within which it be paid, and a decree to the effect that, in default of such payment, defendant be forever foreclosed of all right or interest in the lands."

The plaintiffs were, therefore, not entitled to the relief demanded in their complaint; nor were the defendants entitled to the relief demanded in their cross-complaint. They could not appeal to a court of equity to declare them the owners of an undivided one-half interest in the property without first paying or tendering their portion of the purchase price. But while neither party was entitled to the relief demanded, nevertheless, the court had jurisdiction of the parties and the subject-matter of the action, and should have granted to the parties such relief as they were entitled to under the facts.

The judgment is therefore reversed, and the cause remanded to the court below, with directions to ascertain the amount the defendants should pay to make up their one-half of the purchase price, and any other sums the plaintiffs may have paid on account of the common property, with interest from date of payment, and to enter a decree declaring the defendants the owners of an undivided one-half interest in the premises in controversy upon the payment of the sums thus ascertained within ten days from the date of the decree, and if they fail to make payments within that time, to enter a decree quieting the plaintiffs' title as prayed in their complaint. Neither party will recover costs on this appeal.

MOUNT, C. J., FULLERTON, HADLEY, and DUNBAR, JJ., concur.

ROOT and CROW, JJ., took no part.