[No. 6519.    Decided April 23, 1907.]

MARTHA B. KERSHAW, *Appellant*, v. R. S. SIMPSON *et al.*,
*Respondents.*[1]

TENANTS IN COMMON—PARTNERSHIP—MUTUAL RIGHTS—RIGHT TO
ACQUIRE TITLE—LEASEHOLDS.  Joint lessees of premises are not co-
partners thereby precluding one or more from purchasing the prem-
ises at the end of the term without being accountable to a co-lessee,
desiring to participate in the purchase, but are rather tenants in
common, when no condition or fiduciary relationship existed pre-
venting such action as a matter of good faith or public policy; espe-
cially where such co-lessee had always treated her half interest in
the lease as a separate entity, and invokes equity to recover an in-
terest in the purchase, and made no offer to participate in the sale or
pay her share of the price for three years, during which time the
value of the property greatly increased.

Appeal from a judgment of the superior court for What-
com county, Neterer, J., entered May 12, 1906, upon findings
in favor of the defendants, after a trial on the merits, in an
action to quiet title.  Affirmed.

*T. B. McMartin*, for appellant.

*Black, Kindall & Kenyon*, for respondents.

ROOT, J.—This is an action to have the rights of the re-
spondents to certain real estate in Bellingham decreed to be
held in trust for appellant and respondents.  From a judg-
ment in favor of the latter, this appeal is prosecuted.

On February 7, 1898, appellant and respondents Simpson
and Thomas took from the owners of said property a lease

[1]Reported in 89 Pac. 889.

for the term of five years from the 1st day of April, 1898. Said lease provided that, at its termination, the lessees could remove from the premises the improvements made thereupon, in case the lessors did not wish to buy said improvements or re-lease the land to said lessees. On the 1st of September, 1899, the same lessors executed to the same lessees another lease of the same premises for a term of three years from April 1, 1903, and it was recited therein that the same was an extension of the lease theretofore made. In said new lease it was provided that the lessees should not sublet or assign the lease without the written consent of the lessors, and that at the expiration of the lease the lessors might remove the buildings erected thereon according to the terms and conditions of the original lease. Under and pursuant to the terms of these leases, the lessees took possession of, and made valuable improvements upon, the premises.

On or about August 8, 1902, the owners of said premises entered into an agreement with respondents Simpson, Thomas and Lane, by which they agreed to sell to said respondents the property theretofore leased, together with adjoining property in amount about twice that of the leased premises. Appellant knew of this contract at the time it was made, or soon thereafter, but never at any time asked to participate in said purchase, and never tendered or offered to pay any portion of the purchase price. The value of the property has greatly increased since the making of said contract of purchase. The respondents Simpson, Thomas, and Lane having refused to extend the lease and refused to recognize any rights of appellant in and to said premises after April 1, 1906, plaintiff instituted this proceeding.

It is her contention that she and the other lessees were cotenants and copartners, and that the purchase of the demised property by her cotenants without her consent or participation was a violation of a trust and duty owed by them toward her; that the privilege of getting an extension of the lease at its termination was a valuable right of which

she could not be deprived by her cotenants; that they having purchased the property without her consent and to her injury, as indicated, their said action was inconsistent with the fiduciary relation that existed between them, and that she has a right to have said purchase treated as one made for all of the lessees, and that upon her paying her portion of the purchase price the property should be decreed to have been purchased, and to be now held, for the benefit of all the lessees.

The respondents urged that these lessees were not cotenants or copartners, but tenants in common. It appears that under the lease appellant took a one-half interest, while the other two lessees held the other half. It also appears that the appellant caused her interest in the improvements upon the leasehold estate to be separately insured for her benefit. It would seem from this that she treated her interest as a separate entity, and this would appear to be inconsistent with the idea of partnership property. It is not alleged, nor is there any evidence or claim, that there was ever any partnership agreement other than such as might be implied from the leases mentioned. We do not believe that the leases referred to constitute the lessees a copartnership; nor do we think that the obligations imposed upon one another by copartners, by reason of such relationship, is necessarily imposed upon tenants in a lease of this character. We can see nothing in these leases that would have prevented any one of the lessees from at any time selling or disposing of his interest under the lease, other than the limitation requiring consent from the lessors. There was nothing requiring consent from the other lessees. The lease terminated at a certain date; there was nothing in it requiring the lessors to give an extension. As to whether or not such an extension could be obtained, nobody could tell. It was merely an indefinite, uncertain chance. Any other person than one of these lessees could have purchased the property and gone into possession at the termination of the lease, regardless of the wishes of any

or all of the lessees. This being true, we are unable to see why any one or more of the lessees might not do the same.

It is possible that there might be instances where, on account of the character of the property or of the use which was being made thereof, a condition might exist which would render it bad faith on the part of one cotenant or tenant in common to purchase the demised premises and defeat the opportunity for renewing the lease. It is possible that, under some circumstances, the relationship occasioned by a lease to several tenants, jointly or in common, might create a condition and a fiduciary relationship which should, as a matter of good faith and public policy, be sufficient to prevent any one or more of the tenants from purchasing the leased premises except for the benefit of all. The facts of this case do not place it in that class of cases where one cotenant acquires a title adverse to the leasehold interest. In such a case equity and good conscience forbid that such title should be asserted against the other tenants. But in the case at bar we can find nothing of this character. It would scarcely be contended that the respondent lessees could have compelled the appellant to join with them in the purchase of these premises, or to join with them in an extension of the lease had they desired an extension. Neither could she have compelled them to join with her in the extension of the lease, should she have desired an extension. There is nothing of misrepresentation or deceit in the leases. The rights of all the parties were plainly set forth in the leases. All the parties knew what those rights and privileges were. Appellant knew that there was no certainty or assurance of an extension of the lease after its termination. No attempt was made to interfere with the enjoyment of the leasehold estate during its existence. All of the lessees, including appellant, received full benefits from the use of the property to the time the lease expired.

Appellant, after learning of the purchase of the property by respondents, did not tender any portion of the purchase

price, although something over three years elapsed from the time she learned of said purchase to the date of the commencement of this action. As this is an action wherein she invokes equity, it was incumbent upon her to show that she had done equity by paying, or promptly offering to pay, her portion of the purchase price.

We think the judgment of the trial court was correct, and it is therefore affirmed.

HADLEY, C. J., CROW, FULLERTON, MOUNT, and DUNBAR, JJ., concur.