[No. 13982.   Department Two.   May 5, 1917.]

W. G. DWIGHT, *Appellant*, v. ELLA WALDRON *et al.*,
*Respondents.*[1]

TENANTS IN COMMON—RIGHT OF COTENANT—PURCHASE OF TAX
TITLE.  A tenant in common cannot deprive his cotenants of their
interest by purchasing an outstanding tax certificate of delinquency
and converting the same into a title, provided the cotenants make
timely tender of their proportionate part of the tax; which they
may elect to do within a reasonable time, under circumstances con-
sistent with fair dealing.

SAME—PURCHASE OF TAX TITLE—RIGHTS OF COTENANTS.  Coten-
ants are guilty of laches which will deprive them of their rights,
where they delayed for 20 years after default in the payment of
the taxes, and for 12 years after title had been acquired, without
offer to pay taxes, which were regularly paid by their cotenant
under claim of exclusive ownership after acquiring the tax title;
since failing to reimburse the cotenant within a reasonable time
amounts to an election to permit him to take title for his individ-
ual use.

TAXATION—FORECLOSURE OF CERTIFICATE—SALE—VALIDITY.  A tax
title acquired by foreclosure of a delinquency certificate by action
is not rendered void by the fact that the property was sold for ap-
proximately fifty cents in excess of the taxes due.

Appeal from a judgment of the superior court for Grays
Harbor county, Sheeks, J., entered March 21, 1916, upon sus-
taining a demurrer to the complaint, dismissing an action for
equitable relief.   Affirmed.

*Stewart & Tucker*, for appellant.

*Bridges & Bruener*, for respondents.

FULLERTON, J.—This is an action brought by the appel-
lant, Dwight, against the respondents Waldron to set aside
a tax deed to certain real property situate in the city of
Hoquiam, and to quiet the title of the respondents to certain
undivided interests in the property.   A demurrer to the com-
plaint was interposed and sustained, after which the appel-

[1]Reported in 164 Pac. 761.

lant elected to stand thereon.   From a judgment of dismissal thereafter entered, this appeal is prosecuted.   The ultimate question therefore is, Does the complaint state facts sufficient to constitute a cause of action?

The facts stated in the complaint are substantially these: On October 16, 1890, the respondent R. P. Waldron, together with Arch Murray, Alex Miller and Frank Miller, became the owners of the property in question by virtue of a warranty deed executed to them by the then owner of the property, the deed conveying to Frank Miller an undivided one-seventh interest in the land, and to the remaining grantees an undivided six-seventh's interest therein.   These parties held the land until June 20, 1895, when R. P. Waldron conveyed his interest to one L. W. Walker.   During the years the property was held by the original purchasers, taxes were assessed against the property by the assessor of Chehalis county, the county in which the lands lie, in the name of the original purchasers, up to the time of the transfer by Waldron to Walker, and from that date up to May 31, 1902, in the name of the original purchasers, with the exception that the name of Walker was substituted for that of Waldron as one of the owners of the property.   The owners of the property suffered the taxes to become delinquent, and on the date last named, one M. E. Ross, then a stranger to the title, procured from the county of Chehalis a certificate of delinquency for the taxes for the years 1896 to 1900, inclusive.   After procuring this certificate and on September 2, 1902, M. E. Ross acquired, by quitclaim deed from L. W. Walker, his interests in the property.   On September 13, 1902, Mrs. Ross began an action in the superior court for Chehalis county to foreclose her certificate.   At this time both Alex Miller and Frank Miller were dead, and the plaintiff made parties defendant to the foreclosure proceedings the surviving owner, Murray, and the heirs at law of the deceased owners.   Service was had upon Murray personally, and upon the other defendants by publication after a return of not found had been

made by the sheriff, in whose hands the summons was placed for service. Default was made in the proceedings by the defendants, and on December 18, 1902, a decree of foreclosure was entered on the certificate of delinquency for the principal and interest due thereon, together with the costs of the proceedings, the total aggregating the sum of $81.73. Thereafter a sale of the property was had under the decree of foreclosure by the treasurer of Chehalis county, at which sale Mrs. Ross became the purchaser of the property, and on February 14, 1903, a treasurer's deed therefor was issued to her. The tax sale was in all respects regular, other than that the land was sold for a sum in excess of the amount due on the decree "of approximately fifty cents." After the execution of the treasurer's deed, Mrs. Ross assumed ownership of the entire tract, and on April 7, 1909, conveyed the same by warranty deed to R. P. Waldron. The respondent H. B. Waldron is the wife of R. P. Waldron, and these respondents, on March 19, 1909, mortgaged the property to the respondent Ella Waldron, which mortgage had not been paid in full at the time of the commencement of the present action on December 8, 1915. Since the execution of the tax deed, Mrs. Ross and R. P. Waldron and wife, as owners, have paid all of the taxes levied upon and assessed against the property, and "plaintiff has not, and his predecessors in interest have not, paid or undertaken to pay any taxes on the said property since the execution of the said tax deed." The appellant acquired such interests in the property as he possesses from Arch Murray and the heirs at law of Frank and Alex Miller. He made no tender of the taxes paid by the respondents and their predecessors in interest, but in his complaint avers that he is ready and willing to pay the amount of the taxes, interest, costs, and accrued costs becoming due and payable on the property on account of levies of taxes made against the property since the year 1896.

The complaint contains allegations also concerning the relations existing between Mrs. Ross and the respondents Wal-

dron, and concerning their purposes in acquiring the title to the property through the tax foreclosure proceedings, but as no stress is laid on these allegations in this court, they need not be further noticed.

The complaint contains no allegation concerning the possession of the property since the time of the tax foreclosure sale. It is inferable from the allegations, however, that neither the appellant nor any of his predecessors in interest has ever had possession of it, and the most favorable deduction that can be drawn in his favor is that the land has been at all times vacant and unoccupied.

The demurrer was based on two statutory grounds of demurrer; want of facts sufficient to constitute a cause of action, and the statute of limitations. The record does not disclose upon which of these the trial court rested its conclusion, but the appellant contends that the conclusion is not sustainable upon either of the suggested grounds. More specifically, he contends that Mrs. Ross became a tenant in common with the predecessors in interest of the appellant when she acquired the interests of R. P. Waldron on June 20, 1895; that her subsequent acquisition of the legal title to the whole property at the tax foreclosure sale inured to the benefit of her cotenants, and that such title has not since lapsed, either under the doctrine of laches or by the statute of limitations.

It is a generally recognized rule that there is such a mutual relation between tenants in common of real property that one of such tenants cannot deprive his cotenants of their interests in the common property by purchasing an outstanding adverse title thereto, or by the purchase of an incumbrance thereon which is afterwards converted into title, when the purchase is made for the benefit and protection of the common estate. The principle has been frequently recognized by this court. *Cedar Canyon Cons. Min. Co. v. Yarwood*, 27 Wash. 271, 67 Pac. 749, 91 Am. St. 841; *Dahlstrom v. Beard Fruit Co.*, 73 Wash. 13, 131 Pac. 450; *Stoll v. Griffiths*, 41 Wash. 37, 82 Pac. 1025; *Burnett v. Ewing*, 39 Wash. 45, 80 Pac.

855; *Anderson v. Snowden*, 44 Wash. 274, 87 Pac. 356, 120 Am. St. 998; *Stone v. Marshall*, 52 Wash. 375, 100 Pac. 858; *Trumbull v. Bruce*, 64 Wash. 644, 117 Pac. 472.

But it is not meant by the rule that the purchase is void, or that the title acquired by the purchase vests by operation of law in the cotenants. The cotenants may believe that the property is not sufficient in value to justify the expenditure, or they may believe that the common title is the paramount title; hence the title acquired by the purchase is not forced upon them. The rule but gives the cotenants the right to share in the benefits of the purchase; a privilege which they may accept or reject. At most, the title acquired by the purchase is voidable, not void, and they who would complain must elect whether they will void it or not. *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587; *Starkweather v. Jenner*, 216 U. S. 524.

It is a settled rule, also, that, if the cotenant would share in the adverse title acquired by the purchasing tenant, he must pay, or tender payment of, his proportionate share of the price necessarily expended in acquiring the title, and must exercise the privilege within a reasonable time. *Starkweather v. Jenner, supra;* Freeman, Cotenancy, § 156. What will constitute a reasonable time depends much upon the facts of the particular case, but the authorities all agree that whatever delay is occasioned must be entirely consistent with fair dealing, and not attributable to an effort to retain the advantages of the purchase while the responsibilities attending upon it are shirked.

In the light of these principles, it seems to us that the judgment of the trial court can be rested on the ground of laches, if not strictly upon the statute of limitations. From the dates given, it will be observed that nearly twenty years had elapsed between the time the appellant's predecessors in interest made default in the payment of taxes and the time the appellant sought by this action to redeem therefrom. This is almost twice the period of the statute of limitations for the

recovery of real property held adversely. More than twelve years have elapsed since the respondents' predecessor in interest acquired the property at the tax foreclosure sale. At that time, they paid the accumulated taxes, and have since regularly paid all of the taxes subsequently levied upon the property. They have, at all times since the sale, claimed exclusive ownership of the property, and have otherwise exercised acts of ownership over it consistent only with a claim of exclusive ownership. The property consists of city lots in a growing city, and its value must necessarily have fluctuated, although having a general tendency to increase. It must be remembered also that the tax foreclosure sale at which the predecessor in interest of the respondents purchased the property was not the ordinary tax sale made upon a general notice of more or less publicity, but was a judicial sale founded on a decree of foreclosure, in an action in which the cotenants were made defendants and in which all of them found within the jurisdiction of the court were personally served with summons. They cannot, therefore, plead, and do not plead, want of notice of the sale. They were charged with notice, also, that, on each succeeding year, there were taxes levied against the property which they must pay if the title to the property was to be preserved in them, and they are chargeable with knowledge that the land was vacant land producing no rental, and if the taxes were being paid by their cotenants, they were being paid from the private funds of such tenants which they were equitably bound to proportionately reimburse.

Equity does not oblige a cotenant to pay out his money to protect the common title. It rather permits him to do so, and converts him into a trustee when he has done so. But it equally lays an obligation upon the other cotenants to reimburse him for his outlay, and a failure to reimburse him within a reasonable time will be taken as an election on their part to allow him to take the title he has acquired for his individual

use. *Wilson v. Linder,* 21 Idaho 576, 123 Pac. 487, Ann. Cas. 1913E 148, 42 L. R. A. (N. S.) 242.

In *Kershaw v. Simpson,* 46 Wash. 313, 89 Pac. 889, a case similar in principle to the one at bar, we used this language:

"Appellant, after learning of the purchase of the property by respondents, did not tender any portion of the purchase price, although something over three years elapsed from the time she learned of said purchase to the date of the commencement of this action. As this is an action wherein she invokes equity, it was incumbent upon her to show that she had done equity by paying, or promptly offering to pay, her portion of the purchase price."

The case of *Dahlstrom v. Beard Fruit Co.,* 73 Wash. 13, 131 Pac. 450, does not support the appellant's contention, nor does it hold that the tenant in common acquiring the adverse title cannot in any case assert such title short of the period of the statute of limitations. In that case, the tenant was in possession of the land, collecting the rents and profits. The rentals had been more than sufficient to pay the taxes, and the tenant had led the cotenant to believe he would pay them. It was held that, under such circumstances, he could not suffer the taxes to become delinquent, purchase at the tax sale, and assert the title so acquired as against the interests of the cotenant short of the period of the statute of limitations. This is not the case here. There was here no possession of the property, nor rents nor profits, nor did the tenant agree to pay the taxes, and the period elapsing since the tax sale and the open assertion of title exceeds the period of the statute of limitations.

Nor does the fact that the property was sold for approximately fifty cents in excess of the amount of taxes due render void the tax foreclosure proceedings or the title acquired thereby. Cases can be found where, in proceedings wholly *ex parte,* the courts have set aside tax sales for excessive exactions where the excess was perhaps no greater than the excess shown here; but the cases are not in accord with the weight of authority or the better reasoning, even in the in-

stances to which they are strictly applicable.  We cannot think, however, they have application to a procedure such as our statute prescribes.  Here the foreclosure is a judicial proceeding, had after the service of a summons, in which the adverse party may appear and contest the foreclosure.  The sale is made after judgment in the cause, and the opportunity is given to appear and question the regularity of the sale before it becomes final by the execution of a deed.  Manifestly, it seems to us, it would be a perversion of the statute to hold that an irregularity such as this renders the entire proceeding void.

It is our conclusion that the complaint shows no ground for a recovery of the property, and that the judgment should be affirmed.  It is so ordered.

ELLIS, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.