## UNITED STATES v. BOARD OF COUNTY COM'RS, OF PAWNEE COUNTY, OKL.
### No. 2155.

District Court, N. D. Oklahoma.
Feb. 25, 1936.

C. E. Bailey, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl.

Carl McGee, Co. Atty., of Pawnee, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

By this action the United States seeks to recover for its Indian ward, Cecilia Guittar Rappuie, taxes assessed against her allotment as a member of the Pawnee Tribe of Indians, for the years 1919 to 1930, inclusive, and paid by her, in the total amount of $916.94.

The parties stipulated as to the following facts:

Cecilia Guittar Rappuie is an adult member of the Pawnee Tribe of Indians in Oklahoma, and as such, under an Act of Congress, approved February 8, 1887 (24 Stat. 388), was allotted certain lands in Pawnee county, Okl. The United States issued a trust patent to her for said lands on October 9, 1893, which patent contained a restriction clause by the terms of which the United States was to hold the lands in trust for said allottee for a period of 25 years. Afterwards the trust period named in the patent was extended by executive order until May, 1938. On December 24, 1917, during the original trust period, the Secretary of Interior issued and delivered to the allottee a fee-simple patent to said lands, which was recorded in the land records of Pawnee county. The county assessor of Pawnee county assessed the lands for taxation purposes for the years 1919 to 1930, inclusive, and there was levied thereon, and collected from the allottee during said years, taxes in the total sum of $916.-94. On March 15, 1932, an order was made by the Secretary of Interior canceling the fee-simple patent.

In addition to the stipulated facts, the evidence disclosed that the allottee was an aged woman, whose education was limited to one year's schooling, and who could neither read nor write; that she made no

application to the Secretary of Interior for the issuance of the patent of December 24, 1917; that the patent was delivered to her by the Indian agent at Pawnee, Okl., and that she placed the same of record and paid the taxes each year; that, however, she protested to the office of the county treasurer of Pawnee county in the beginning about having to pay taxes, but was informed by some one in that office that unless she paid the taxes her land would be sold. It was also in evidence that during the year 1917 the Secretary of Interior, acting under and by virtue of congressional enactment, appointed a competency commission to make an investigation of the condition and competency of various allottees of the Pawnee Tribe of Indians, and other tribes. This Commission made a report on Cecilia Guittar Rappuie, a copy of which was in evidence. This report showed that the allottee could neither read nor write, and that she had had only one year's schooling. She testified that no member of the Competency Commission had ever talked to her. One of the witnesses, an employee of the Pawnee Agency for the past 15 years, testified that the information contained in the report was probably obtained from the superintendent of the Pawnee Agency. Based upon this report, the Secretary of Interior found the allottee to be competent, and as a result, and under the authority delegated by the Act of Congress of May 8, 1906 (34 Stat. 182), the patent of December 24, 1917, was issued to her. The copy of the report showed that it contained a blank application for the issuance of a fee patent, which application was to be signed by the allottee, but this allottee never signed such application. The Act of May 8, 1906 (25 U.S.C.A. § 349), contained this provision: "Provided, that the Secretary of the Interior may, in his discretion, and he is hereby authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said lands shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent."

The cancellation of the fee patent on March 15, 1932, by the Secretary of Interior, was made pursuant to authority conferred by the Act of Congress of February 26, 1927 (44 Stat. 1247, title 25 U.S.C.A. § 352a), and the amendment thereof of February 21, 1931 (46 Stat. 1205, 25 U.S.C.A. § 352b). These acts granted power to the Secretary to cancel a patent in fee "where such patent in fee simple was issued without the consent or an application therefor by the allottee," and evidently the action of the Secretary in ordering the cancellation was based on the fact that this allottee had made no application therefor, and had not consented to the issuance thereof. By reason of the terms of the General Allotment Act of February 8, 1887, heretofore cited, this allottee had a right to retain her lands as restricted, and free from all taxation during the trust period. This right was a vested property right, and she could not be divested of it by the government without her consent. See the opinion of Judge Vaught of the Western District, in the case of United States v. Board of Com'rs of Comanche County, Okl. (D.C.) 6 F.Supp. 401, and the authorities there cited. While it is true there was in that case a strong protest on the part of the allottee against the issuance and receipt by her of the patent, still the legal situation there is not dissimilar to that here, since the allottee in that case, although she first refused to receive the patent, did finally take it, and placed the same of record herself, just as did the allottee here.

It is true, as defendant states in its brief, I announced at the conclusion of the testimony at the trial that I would have to hold that the allottee, under the facts adduced, had accepted the patent; however, after reviewing the evidence from the stenographer's notes, and giving careful consideration to the situation of this allottee as an uneducated and inexperienced ward of the government, wholly depending and relying upon the advice and direction of the Agency officials, I am now compelled to hold that she did not voluntarily consent to the issuance of the fee patent. True, she made no formal protest against receiving it at the time of its delivery to her (although she testified that at that time she did not know what it was), yet she was dependent upon the government for direction as to her affairs, and when its agent handed her the patent it was but natural, as an obedient ward of the government, ac-

customed to conforming to all of the dictates of her paternalistic guardian, for her to take and record the instrument, with no doubt she thought that there was no other alternative. Had she been properly advised by the government agents as to her rights, there is little question but that she would have registered a vigorous objection to having her lands released from the protection afforded by the trust restriction assumed and guaranteed by the government. Her protest against paying the taxes confirms this conclusion.

Defendant cites and relies upon the case of Heacock v. Tripp County, 60 S.D. 518, 244 N.W. 887, by the Supreme Court of South Dakota, as being in conflict with the conclusions I have reached, however, the facts as to the acceptance and receipt of the fee-simple patent in that case are not disclosed in the opinion, which merely states that the patent was accepted and received and filed for record by the plaintiff. But, if that case is authority for defendant's position, I am not disposed to follow same because it is not in accord with the spirit of the decisions of United States Courts as I read them.

Defendant has strenuously argued that the taxes were paid voluntarily by the allottee and cannot, therefore, be recovered. Applying the principles announced in Ward v. Board of Com'rs of Love County, Okl., 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751, to the facts here, I cannot acquiesce in such contention. I am of the opinion that the payment of the taxes was not voluntary on the part of the allottee, but rather was made under compulsion; the allottee being motivated by the fear that her lands would be sold unless the levied taxes were paid. The Ward Case also sufficiently answers the defendant's further contention that the defendant is liable for only that part of the taxes collected for the use and benefit of Pawnee county, and not for the portion thereof levied and collected for the benefit of the state and other municipal bodies.

For the same reasons stated by Judge Vaught in United States v. Board of Com'rs of Comanche County, Okl., supra, I hold the plaintiff is not entitled to judgment for any interest on the taxes paid.

Therefore, the judgment will be for the plaintiff in the sum of $916.94, the total amount of the taxes levied and collected, and for costs.