**UNITED STATES v. FERRY COUNTY et al.**

No. E—4494.

District Court, E. D. Washington, N. D.

July 16, 1941.

1008

Lyle Keith, U. S. Atty., and Harvey Erickson, Asst. U. S. Atty., both of Spokane, Wash., for plaintiff.

Osee W. Noble, of Republic, Wash., for defendants Ferry County and others.

H. N. Martin, of Republic, Wash., and O. C. Moore, of Spokane, Wash., for defendant John Daniels.

SCHWELLENBACH, District Judge.

This is an action brought by the United States against Ferry County, Washington, the Commissioners thereof, the Assessor-Treasurer of said County and one John Daniels. It is brought on behalf of the four Indian daughters of Stephen Lambert and Mary Pierre Lambert and the surviving second husband of Mary Pierre Lambert, all of whom are members of the Colville Tribe of Indians shown upon the Reservation rolls as wards of the Government. The purpose of the action is to quiet title to certain real property in the United States as trustee for the use and benefit of the, five Indians. The plaintiff also prays that the tax deed issued to the defendant John Daniels be cancelled and that the outstanding unpaid taxes levied against the property be cancelled and that the defendants be enjoined from taking further action in assessing the property for tax purposes or in attempting to perfect the claim of title of the defendant John Daniels.

The law and the facts in this case were discussed by Judge Neterer in his decision denying motion to dismiss reported in D.C., 24 F.Supp. 399. Because there is a variance between the testimony introduced and the facts alleged in the complaint and because new and additional points have been raised by defendants in their briefs submitted subsequent to trial, it seems advisable that I should set forth the facts in detail.

Stephen Lambert, a Colville Indian, died on March 30, 1915. Thereafter, on June 27, 1917, there was issued in his name a trust patent to the property involved in this action. From the wording of the patent, it is apparent that it was issued in contemplation of the provisions of the Act of June 25, 1910, U.S.C.A. Title 25, Section 372, because the trust patent provided

"That the United States of America, in consideration of the premises, has allotted, and by these presents does allot, unto the said Indian the Land above described, and hereby declares that it does and will hold the Land thus allotted (subject to all statutory provisions and restrictions) for the period of twenty-five years, in trust for the sole use and benefit of the said Indian and at the expiration of said period the United States will convey the same by patent to said Indian in fee, discharged of said trust and free from all charge and encumbrance whatsoever; but in the event said Indian dies before the expiration of said trust period, the Secretary of the Interior shall ascertain the legal heirs of said Indian and either issue to them in their names a patent in fee for said land, or cause said Land to be sold for the benefit of said heirs as provided by law."

On November 26, 1918, the Secretary of the Interior, in accordance with the prescribed procedure, determined the heirs at law of Lambert to be his surviving wife and the four daughters above described. In the meantime, the wife had married Desautel. On October 28, 1919, without the request of any of the heirs or application therefor by any of the heirs, there was issued a fee patent to the five heirs of Lambert. The testimony of these heirs discloses that the issuance of the fee patent was without the consent of any of the heirs except Sarah Daniels who is the wife of John Daniels, one of the defendants in this case. She testified that she wanted the fee patent issued and that she caused the fee patent to be filed for record in the office of the Auditor of Ferry County on March 23, 1920. Mrs. Daniels also testified that her mother wanted the fee patent issued. In this regard the testimony is in conflict with that of her sisters and in direct conflict with a letter which she, herself, wrote to the Agency on January 25, 1920. I was compelled to reject the testimony of Mrs. Daniels insofar as it referred to the mother's attitude and counsel for plaintiff now

asks me to reject her testimony concerning her own attitude. I find it impossible to do this, however, since there is no conflict concerning that point and since it is undisputed that she voluntarily caused the fee patent to be filed for record. Counsel cites two cases holding that the mere filing or recording by an Indian of a fee patent is not sufficient to show that the Indian consented to receive it. The first of these cases is United States v. Board of Commissioners of Comanche County, D.C., 6 F. Supp. 401. In that case, however, the Indian protested and only recorded the patent after being forced to do so. The other case is United States v. Board of County Commissioners, D.C., 13 F.Supp. 641. In that case, the Indian was uneducated and ignorant and relied upon the improper advice of the Indian Agent. Every indication in this case is that the action by Sarah Daniels was voluntary and done for the express purpose of creating a situation under which she and her husband might acquire title to the property to the exclusion of her mother and sisters by means of tax foreclosure sale. The two cited cases are not in point.

After 1920, taxes were regularly assessed against this property. They were not paid. On May 18, 1925, a certificate of delinquency was issued. On April 5, 1926, foreclosure was started, April 13, 1926, a judgment of foreclosure was entered and on May 6, 1926, the Treasurer of the defendant County executed and delivered to the defendant John Daniels a treasurer's tax deed to the real estate involved. On September 27, 1928, Mary Desautel died and her heirs were thereafter determined to be her surviving husband and the four daughters above described. On May 26, 1930, the Secretary of the Interior, acting under authority of the Act of February 26, 1927, 44 Stats. 1247, U.S.C.A. Title 25, § 352a, cancelled the patent in fee which had been issued to the heirs of Stephen Lambert and restored the lands to their trust patent status.

"§ 352a. Cancellation of patents in fee simple for allotments held in trust. The Secretary of the Interior is hereby authorized, in his discretion, to cancel any patent in fee simple issued to an Indian allottee or to his heirs before the end of the period of trust described in the original or trust patent issued to such allottee, or before the expiration of any extension of such period of trust by the President, where such patent in fee simple was issued without the consent or an application therefor by the allottee or by his heirs: Provided, That the patentee has not mortgaged or sold any part of the land described in such patent: Provided also, That upon cancellation of such patent in fee simple the land shall have the same status as though such fee patent had never been issued. (Feb. 26, 1927, c. 215, 44 Stat. 1247.)"

Later, on August 23, 1937, the defendant John Daniels commenced an action in the Superior Court of the State of Washington for Ferry County seeking to quiet title to the property in himself. Thereafter this action was started.

The position of the defendants can be briefly stated as follows:

■ ■ They contend that all of the rights acquired by the parties were derived from the Act of Congress of June 25, 1910, U.S.C.A. Title 25, § 372, which provides the ascertainment of heirs of deceased allottees, the pertinent part of which is

"When any Indian to whom an allotment of land has been made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive. If the Secretary of the Interior decides the heir or heirs of such decedent competent to manage their own affairs, he shall issue to such heir or heirs a patent in fee for the allotment of such decedent; if he shall decide one or more of the heirs to be incompetent he may, in his discretion, cause such lands to be sold."

Defendants point out the language of the trust patent, which I have heretofore quoted, and urge that the 1910 Statute was mandatory and that the Secretary, in 1919, had no discretion but was compelled either to issue a patent in fee, if he found the heirs were competent or to sell the land if he found the heirs or any of them to be incompetent.

Defendants then point out that this case differs from any of the cases cited by plaintiff in that it has to do with heirs who inherited from an allottee whose trust patent was issued after the passage of the 1910 Statute. I think I should state at this point

that a most exhaustive search by me has failed to reveal any case where this precise question was considered. There are a number of cases involving heirs where the trust patent was issued before 1910. United States v. Nez Perce County, 9 Cir., 95 F.2d 232; Board of County Commissioners, Jackson County, Kansas v. United States, 10 Cir., 100 F.2d 929; United States v. Lewis County, Idaho, 9 Cir., 95 F.2d 236.

There are a number of cases where allottees are involved where the trust patent was issued before 1910. Board of Commissioners of Caddo County, Oklahoma v. United States, 10 Cir., 87 F.2d 55; Morrow v. United States, 8 Cir., 243 F. 854; United States v. Board of County Commissioners of Pawnee County, Oklahoma, D.C., 13 F. Supp. 641; United States v. Board of Commissioners of Comanche County, Oklahoma, D.C., 6 F.Supp. 401; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; English v. Richardson, 224 U.S. 680, 32 S.Ct. 571, 56 L.Ed. 949; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478.

There is one case where an allottee was involved in which the trust patent was issued after 1910. Glacier County, Montana v. United States, 9 Cir., 99 F.2d 733.

So far as I have been able to find, there are no cases discussing this precise combination of circumstances. Consequently, defendants contend that none of the cases in which our various Federal courts have passed upon the questions involved herein are of any value in arriving at a decision herein. Defendants say that a distinction must be made between Indians who take title as heirs and not as allottees. In support of this position, they cite Harris v. Bell, 254 U.S. 103, 41 S.Ct. 49, 65 L.Ed. 159; Stewart v. Keyes, 295 U.S. 403, 410, 411, 55 S.Ct. 807, 79 L.Ed. 1507; Superintendent of Five Civilized Tribes v. Com'r of Int. Rev., 295 U.S. 418, 421, 55 S.Ct. 820, 79 L.Ed. 1517.

They state again that exemption from taxation is not a property right but a personal right of the allottee which does not run with the land. On that point, they cite Fink v. Board of Com'rs of Muskogee County, 248 U.S. 399, 404, 39 S.Ct. 128, 63 L.Ed. 324; United States v. Board of Commissioners, McIntosh County, D.C., 271 F. 747, 748, 763; Stewart v. Keyes, 295 U.S. 403, 410, 411, 55 S.Ct. 807, 79 L.Ed. 1507.

Having thus attempted to distinguish this case from the cases upon which the plaintiff relies and the other cases to which reference has been made, defendants conclude that the right of taxation in the County and the right to title in John Daniels are vested rights and that, insofar as the Act of February 26, 1927, U.S.C.A. Title 25, Section 352a, might be used so as to divest them of their rights, it is in violation of the "due process of law" clause of the Fifth Amendment of the Constitution of the United States. In support of the latter point, defendants rely upon Garfield v. United States ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168.

Plaintiff rests its case upon two decisions from this Circuit. United States v. Nez Perce County, 9 Cir., 95 F.2d 232; United States v. Benewah County, 9 Cir., 290 F. 628.

These cases, therefore, assume such importance that a detailed discussion of them is necessary. In the Nez Perce County case, the Government brought suit to quiet title as against the County for certain lands the Government claimed to be holding in trust for one Caleb Carter. The original trust patents were issued in 1895 and in 1897 under the provisions of the General Allotment Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq. In 1919, certain of the heirs of the original allottees filed a petition for partition of the lands as between the heirs. This petition for partition was filed in compliance with the provisions of the Act of June 25, 1910, supra. Caleb Carter did not join in the petition. He did, however, accept the fee patent for his portion and taxes were levied against it which he paid for several years and thereafter they remained unpaid and in 1932 a tax deed was issued to the County. Meantime, at the expiration of the twenty-five year trust period in 1920, an extension of the trust period was ordered by the President for ten years and it was again extended for a further term on March 18, 1930. On April 20, 1932 the Secretary of the Interior, under authority of the Act of February 26, 1927, cancelled the fee patent on the ground that it was issued without application by or consent of Caleb Carter. The purposes of the action in the Nez Perce case were precisely the same as are the purposes of this action and the Court granted the relief prayed for by the Government. Unless that case is distinguishable from the case at bar, as defendant contends, it is binding upon me in this case.

The case of United States v. Benewah County, supra, is chiefly of value because of the reference to it in the case of United States v. Nez Perce County, supra. That reference was as follows [95 F.2d 236]: "This court in United States v. Benewah County, supra, as early as 1923 declared that the Act of May 8, 1906, should be held to mean that the action of the Secretary of the Interior authorized by it can be had only on the application of the allottee or with his consent. The Act of February 26, 1927, was little more than a statutory recognition of the principle there announced."

It is true that in this case, as defendants point out, the parties involved were the original allottees and not heirs.

Having pointed out the factual distinctions between the case at bar and the two cases relied upon by the plaintiff, my problem is to determine whether these distinctions constitute a real difference which would justify distinguishing this case from these two cases and the numerous other similar cases. To do so, we must analyze the details of defendant's position.

Defendants first contend that there is a difference because of the fact that parties herein are named as heirs and not as original allottees. It is true that in the case of Harris v. Bell, supra, cited by counsel, such a distinction was made but it was made because of the fact that it dealt with Section 22 of the Act of April 26, 1906, 34 Stat. 137, which specifically distinguished the right of alienation of an heir of an allottee from the right of alienation of the allottee herself. The Supreme Court said [254 U.S. 103, 41 S.Ct. 51, 65 L.Ed. 159]:

"Putting aside the distinctions between title by purchase and title by descent which prevail in the absence of controlling statutes, is not giving effect to the letter and spirit of what Congress has enacted, we think it is manifest that these heirs must be regarded as having received these lands as an inheritance from free land, and not as a direct allotment to them."

The distinction made by the Supreme Court in the case of Stewart v. Keyes, supra, is upon the same statutory basis. There the Court was considering the Act of May 27, 1908, 35 Stat. 312, and after making the distinction between an allottee and an heir, the Court said [295 U.S. 403, 55 S.Ct. 811, 79 L.Ed. 1507]: "Section 9 relates to the alienation of inherited lands. So far as is material here it provides: 'That the death of any allottee of the Five

Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land' * * *."

The other case cited by defendants on this point, Superintendent of Five Civilized Tribes v. Com'r of Int. Rev., supra, does not mention, discuss, or in any way touch on the question of a distinction between allottees and the heirs of allottees.

Likewise, the cases submitted by the defendants in support of their position that "exemption from taxation is not a property right but a personal exemption of the allottee which does not run with the land" are based upon the specific provisions of specific statutes applicable to the particular tribes of Indians involved. Fink v. Board of Com'rs of Muskogee County, supra, is based upon Chapter 199 of the Act of Congress of May 27, 1908, 35 Stat. 312, which removed the existing restrictions on the homestead allotment and which provided "that all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes."

The Court held that the plaintiffs took their title to the lots they were seeking to exempt from taxation by virtue of the terms of this Act and they could not go behind it.

The case of United States v. Board of Commissioners of McIntosh County, supra, is based upon the third proviso of Section 19 of the Act of April 26, 1906, 34 Stat. 144, which provided "that all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

The case of Stewart v. Keyes, supra, is also based upon the Act of May 27, 1908, 35 Stat. 312, Sec. 9 of which reads: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land."

Since these three cases were based upon specific provisions of the statutes relating to the specific tribes of Indians, they are not controlling in the case at bar.

At this point, reference should be made to Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 568, 56 L.Ed. 941. There the Supreme Court distinguished as between exemption from taxation and non-alienability in say-

ing "But the exemption and nonalienability were two separate and distinct subjects. One conferred a right and the other imposed a limitation. The defendant's argument also ignores the fact that, in this case, though the land could be sold after five years, it might remain nontaxable for sixteen years longer, if the Indian retained title during that length of time. * * * The right to remove the restriction was in pursuance of the power under which Congress could legislate as to the status of the ward and lengthen or shorten the period of disability. But the provision that the land should be nontaxable was a property right, which Congress undoubtedly had the power to grant."

Furthermore, this precise question was passed upon in the case of United States v. Nez Perce County, Idaho, supra, with this language: "The authorities are uniform to the effect that this right of exemption is a vested right, as much a part of the grant as the land itself, and the Indian may not be deprived of it by the unwanted issuance to him of a fee patent prior to the end of the trust period. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Ward v. Love County, 253 U.S. 17, 40 S. Ct. 419, 64 L.Ed. 751; United States v. Benewah County, 9 Cir., 290 F. 628; Morrow v. United States, 8 Cir., 243 F. 854; Board of Com'rs of Caddo County v. United States, 10 Cir., 87 F.2d 55; United States v. Dewey County, D.C., 14 F.2d 784; United States v. Comanche County, D.C., 6 F.Supp. 401; United States v. Chehalis County, D.C., 217 F. 281." 95 F.2d 232, 235.

The case of Garfield v. United States ex rel Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168, is in no way controlling. That was a case in which a member of the Chickasaw Nation brought an action against the Secretary of the Interior to require the Secretary to erase the notations upon the rolls by which his name had been stricken from the rolls as a member of the Chickasaw Nation. The action of the Secretary was taken without notice and without authority of law. The Indian had no day in court and the Secretary's action was clearly a violation of the due process clause. The situation here is entirely different. The Secretary's action in cancelling the fee patent was but a step in the cancellation of the rights claimed by these defendants. This action was necessary in order to quiet title. All of the issues were submitted in this action. These defendants have had their day in court. Every requirement of the due process clause of the Fifth Amendment has been and is being complied with in this action.

The fact of the matter is that the due process clause was violated only when the Secretary of the Interior and the wife of defendant Daniels, without the consent of the other heirs of Stephen Lambert, issued and caused to be recorded the fee patent. The rights of these Indians go back much further than the Act of 1910. The Colville Indian Reservation was set apart by Executive Order on July 2, 1872, Executive Order, Indian Reservation, 1912 Ed. 194. The State of Washington recognized the right of the Congress to absolute jurisdiction and control of Indian lands and the fact that no taxes should be imposed by the State of Washington on such lands, Act Feb. 22, 1889, 25 Stat. 677, § 4, par. 2.

The exemption from taxation of the land involved herein is based upon the Act of February 8, 1887, 25 U.S.C.A. § 348. The trust patent issued to Stephen Lambert on June 27, 1917 recited that the United States "hereby declares that it does and will hold the land thus allotted * * * for the period of 25 years in trust for the sole use and benefit of said Indian and at the expiration of said period will convey the same by patent in fee discharged of said trust free from all charge and encumbrance whatsoever."

The right of Stephen Lambert to his allotment stemmed from the Act of Congress of July 1, 1892, 27 Stat. 63. At that time it was the law that at the end of the trust period the allottees were to receive conveyances in fee freed of all charge or encumbrance whatsoever. 25 U.S.C.A. § 348. Stephen Lambert's right to an allotment of land which would be exempt from taxation for a period of 25 years existed long before the passage of the 1910 Statute. It is the law in this Circuit at least that the 1927 Statute was not necessary for the purpose of making an acceptance of a fee patent a condition precedent to its validity. United States v. Benewah County, supra. Therefore, I am compelled to accept the conclusion reached by Judge Neterer in passing upon the motion to dismiss when he said [24 F.Supp. 401]: "The Congress may remove restrictions to alienation with or without the consent of the allottees, Williams v. Johnson, 239 U.S. 414, 36 S.Ct. 150, 60 L.Ed. 358, but such is a clear distinction from depriving the allottees, without their

consent, of the vested right to hold land free from taxation for 25 years."

The fact that the trust patent was issued after the 1910 Statute does not make it possible to distinguish this case from the case of United States v. Nez Perce County, supra, which, as I have said, is controlling.

There is another very potent reason why the defendant Daniels is not entitled to consideration in this case. If the fee patent had been valid, Sarah Daniels would have become thereby a tenant in common with her sisters and her mother. Under the Washington community property law, the presumption is that the money paid for tax certificates is community property. Rem.Rev.Stat.Wash. § 6892. Any property right which John Daniels may have acquired in the property was the community property of himself and wife, and further the law of Washington is plain that a tenant in common cannot assert or claim a lien upon real property for taxes paid as against other tenants in common.

In the case of Stone v. Marshall, 52 Wash. 375, 100 P. 858, 859, it was said: "It is a general rule founded on the requirements of good faith, that any one interested in land with others, all deriving their titles from a common source, cannot acquire an absolute title to the land by a tax deed, to the injury of the others."

See, also, Dwight v. Waldron, 96 Wash. 156, 164 P. 761; Buchanan v. First National Bank, 184 Wash. 185, 50 P.2d 520; Washington Law Review, Vol. XVI, p. 165.

It is true, as pointed out by defendants, that in Dwight v. Waldron, supra, the Washington Supreme Court stated that a tax deed thus obtained was voidable and not void. That, however, does not detract from the potency of the argument so far as this case is concerned.

The principle was affirmed in the case of Olson v. Chapman, 4 Wash.2d 522, 104 P.2d 344. It is based upon the principles of honesty and fair-dealing. It is most certainly applicable in this case for when Sarah Daniels, without the consent of her sisters and over the objection of the mother, caused this fee patent to be recorded, her motive to secure title to the land to the exclusion of her family was apparent. That she was actuated by that motive is confirmed by the fact that the taxes were not paid and that upon the first opportunity her husband bought in the property at a tax foreclosure sale. She alone of all the heirs knew that taxes were being levied against the property. She deliberately schemed with her husband to defeat the remainder of her family in their right of inheritance.

Neither counsel has been able to assist me on the question of the effect of the acceptance by one of the heirs of the fee patent.

I have been unable to find a case touching upon it. I must, therefore, treat the question as one of first impression. This is an action to quiet title by the United States as trustee for 5 Indians. Insofar as the five Indians are cestui que trustents, the property which is held in trust for them is common property. Ferry County did not foreclose its tax lien against the interest of Sarah Daniels. It foreclosed against the property itself. The tax deed acquired by John Daniels was not a deed to the interest of Sarah Daniels. It was a deed to the property. Clearly, one of the cestui que trustents to property jointly owned cannot destroy the interest of the others to her own advantage by secretly accepting and recording a fee patent. We need look no further than the Washington cases I have just cited denying the right of a tenant in common to deprive the others of the property by purchasing a tax deed to understand why this must be the law. To hold otherwise would be unfair and unjust and inequitable. To suggest that it should be done would shock the conscience of any court. Since Ferry County attempted to levy taxes against property which was, in fact, impressed with the trust of tax exemption, the entire foreclosure proceedings must be set aside. This is not a partition suit. There was no effort by the County to tax merely the interest of Sarah Daniels. The relief for which the Government prays must be granted.