UNITED STATES v. CHEHALIS COUNTY et al.

(District Court, W. D. Washington, S. D. September 21, 1914.)

No. 1119.

1. TAXATION (§ 611*)—LANDS OF INDIAN ALLOTTEES—SUIT BY UNITED STATES TO PROTECT.

During the time the United States holds the title to lands in trust for Indian allottees it may maintain a suit to enjoin the collection of taxes imposed on the lands by local authorities in violation of the trust agreement, and may prosecute the suit to a decree, even after the trust period has expired, in the absence of objection by the allottees.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

2. TAXATION (§ 611*)—INDIAN LANDS—SUIT BY UNITED STATES TO PROTECT—LACHES.

The fact that such a suit was not commenced promptly, when the taxation of the lands was first attempted, does not constitute laches, such as will bar the right to relief.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

3. INDIANS (§ 13*)—LANDS OF ALLOTTEES—MISTAKES IN PATENTS—JURISDICTION OF EQUITY.

Act April 23, 1904, c. 1489, 33 Stat. 297, which authorizes the Secretary of the Interior to correct certain mistakes in conditional patents

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issued to Indian allottees, does not provide an exclusive remedy, and where through mistake the restriction against alienation and taxation in such patents was made 20 years, instead of 25 years, as provided by the statute, a court of equity has power to grant relief against such mistake at suit of the United States.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

4. **TAXATION** (§ 543*)—**LAND OF INDIAN ALLOTTEES**—**RECOVERY BY UNITED STATES OF TAXES PAID.**

The United States has such an interest in the lands of Indian allottees, which it has agreed to hold in trust for a stated term free from liens or taxes, that it may maintain a suit to recover back taxes which were unlawfully imposed on such lands during the term and collected from the allottees.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. § 543.*]

5. **TAXATION** (§ 538*)—**LAND OF INDIAN ALLOTTEES**—**RECOVERY BY UNITED STATES OF TAXES PAID.**

The rule that taxes voluntarily paid cannot be recovered back is made for the benefit of the state, and has no application to a suit by the United States to recover taxes wrongfully collected on lands of Indian allottees, which the government has assumed the duty of holding in trust and protecting from taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 999, 1000; Dec. Dig. § 538.*]

In Equity. Suit by the United States against the County of Chehalis, W. B. Paine, County Treasurer, and W. G. Hopkins, George L. Davis, and C. N. Wilson constituting the Board of County Commissioners for said County. Decree for complainant.

Clay Allen, U. S. Dist. Atty., of Seattle, Wash., and Geo. P. Fishburne, Asst. Dist. Atty., of Tacoma, Wash., for complainant.

J. E. Stewart and A. E. Cross, both of Aberdeen, Wash., for defendants.

CUSHMAN, District Judge. The United States sues to enjoin the county of Chehalis, state of Washington, and its treasurer and board of county commissioners, from enforcing or collecting taxes levied upon certain lands, praying that the cloud upon the title of complainant, on account thereof, be removed, and an accounting be had of certain of the taxes which have been paid. The cause has been submitted to the court by the parties upon the following stipulated facts:

"3. That all the lands and premises hereinafter described are situated in said Chehalis county in the Western district of Washington, and until on or about June 1, 1886, were a part of the public domain of the United States of America and open to entry by members of the Indian tribes under and pursuant to the homestead laws of the United States with reference thereto.

"4. That on the 16th day of November, 1886, certain Indians, members of the Chehalis Indian tribe, whose names are hereinafter set forth, had made their respective homestead entries to said lands and had made due and regular application for Indian homestead patents for said respective selections as members of said Chehalis tribe. * * *"

Patents containing the following provision were issued by the United States to the applicants:

" 'This patent is issued upon the express condition that the title hereby conveyed shall not be subject to alienation or incumbrance, either by volun-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tary conveyance, or by judgment, decree or order of any court, or subject to taxation, of any character, but shall remain inalienable and not subject to taxation for the period of twenty years from the date hereof as provided by act of Congress approved January 18, 1881.'

"6. That each of said Indians was in possession of and located upon his respective homestead entry on and after the date of his respective entry.

"7. That no second patent has ever been issued to any of the homestead entrymen, or their heirs, assigns or successors in interest (with certain specific exceptions).

"8. The said defendant Chehalis county and its county commissioners have proceeded to levy and assess taxes against the property described in Exhibit B, hereto attached and made a part hereof, for the years therein set forth, for the purpose of raising revenue for the state, county, school, road, and other purposes, all of which said taxes are still unpaid.

"9. That a portion of the taxes assessed and levied has been heretofore paid to said Chehalis county by certain ones of said patentees, and by others, as set forth in Exhibit C, which is hereto attached and made a part hereof.

"10. That said defendants, and each of them, unless restrained by order of this court, will continue to levy and assess taxes against the said described property and will, unless restrained by this court, issue and cause to be issued delinquent tax certificates on said premises for said taxes, and cause foreclosure sale of said premises therefor."

The second patents mentioned in paragraph 7 were issued in March, 1911. The taxes stated in paragraph 8 as levied were for the years 1909, 1910, 1911, and 1912.

The United States contends that the restriction upon alienation and taxation, stated in each patent as 20 years from its issuance, was a mistake, and should have read 25 years. Upon the hearing, the defendants made the following admission:

"We concede that, under the acts of Congress applicable, the trust patents should have contained a 25-year provision, instead of 20-year provision, against taxation and alienation."

This suit was begun in 1912. All of the patents, save one, were issued in June, 1888; the later patent having been issued in February, 1890. Therefore the restriction upon taxation as to all, save the one tract covered by the later patent, terminated in June, 1913.

[1] The defendants contend that the suit cannot be maintained by the United States, or any one, save the Indian allottees, as the trust period has expired. Act Feb. 8, 1887, c. 119, § 5, 24 Stat. 389, 3 Fed. Stat. Ann. 494, under which the patents were issued, provides:

"That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made. * * *"

It is well settled that, during such trust period, the lands are not subject to taxation by the state or territory. United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779. The suit having been begun before the expiration of the trust period, no particular reason appears, in the absence of objection of the Indian allottees, for now dismissing it without prejudice to the right of such allottees to proceed in separate suits. A probable result would be a multiplicity of suits, to avoid which is itself a ground of equity jurisdiction.

[2] If this suit may not proceed to decree, it is apparent that the United States is denied the right to make good its undertaking to these Indians—that the title should be held by it for the Indians for 25 years, not subject to incumbrance or taxation of any character. It is manifest that the only reason to support such a consequence would be because of the delay on the part of the officers of the United States in promptly securing injunctive relief when taxation was first attempted. Statutes of limitation, in the absence of special provision, do not apply to the United States. Laches may, but it is deemed that it would not in such a case as this, where a promise of protection had been made Indian wards and had not been promptly fulfilled.

[3] It is the further contention of defendants that the only remedy afforded by the law for such a mistake as that made in these patents is provided by Act April 23, 1904, c. 1489, 33 Stat. 297, 10 Fed. Stat. Ann. 141, which provides:

"That in all cases where it shall appear that a double allotment of land has heretofore been, or shall hereafter be, wrongfully or erroneously made by the Secretary of the Interior to any Indian by an assumed name or otherwise, or where a mistake has been or shall be made in the description of the land inserted in any patent, said Secretary is hereby authorized and directed, during the time that the United States may hold the title to the land in trust for any such Indian, and for which a conditional patent may have been issued, to rectify and correct such mistakes and cancel any patent which may have been thus erroneously and wrongfully issued whenever in his opinion the same ought to be canceled for error in the issue thereof, and if possession of the original patent cannot be obtained, such cancellation shall be effective if made upon the records of the General Land Office; and no proclamation shall be necessary to open to settlement the lands to which such an erroneous allotment patent has been canceled, provided such lands would otherwise be subject to. entry; and provided, that such lands shall not be open to settlement for sixty days after such cancellation; and further provided, that no conditional patent that shall have heretofore or that may hereafter be executed in favor of any Indian allottee, excepting in cases hereinbefore authorized, and excepting in cases where the conditional patent is relinquished by the patentee or his heirs to take another allotment, shall be subject to cancellation without authority of Congress."

If it be conceded that the list of mistakes enumerated in the act includes the mistake made in these patents, it does not follow that the remedy provided by that act is exclusive. It is a part of the general equity jurisdiction of the court to correct such accidents and mistakes, and, the United States being a party, this court has jurisdiction over such question.

The above-quoted law was doubtless enacted to give the Secretary of the Interior the extraordinary power to correct certain mistakes in patents to Indians because of the condition of wardship. It has long been the settled law, in the absence of express statutes, that after the issuance of patents the Secretary could no longer correct any mistakes therein; while before such issue he had such jurisdiction, the courts alone have such power after issue. To give the Secretary such power as to a special class of patents would evidence no intention to take from the court its general jurisdiction in such matter.

[4] The further question as to the right of the United States to recover the taxes which have been wrongfully collected presents greater difficulty in its solution, but it is believed to be controlled by what has

already been determined. Notwithstanding the condition of wardship of the Indians, it may be conceded that, when an Indian is imposed upon and money wrongfully exacted from him, in general, the United States would have no right of action. But when such exaction is successfully accomplished because of an asserted claim to property expressly held in trust by the United States, as in this case, and the United States, charged with the duty of protecting the property against such claim, has delayed doing so while the exaction has been accomplished, such circumstances furnish the necessary interest in the matter to give the United States the right to ask the undoing of the wrong consummated, because it was, presumably, busy with other concerns and did not prevent its accomplishment. If, by reason of such delay, equities on the part of the county had arisen, a different question would be presented; but there is nothing in defendants' position to appeal to the conscience.

[5] The familiar doctrine that taxes voluntarily paid cannot be recovered is invoked by the defendant. Putting to one side the question whether payment by persons under such disabilities as tribal Indians can correctly be designated as voluntary, and the further question whether such rule is one to be invoked in equity, yet it is clear that it has no application here. The exacting requirements necessary to take a given case out of the rule as to voluntary payment grows, in part, out of the policy of protecting the state from embarrassment in the matter of collecting its revenues. In such matter it does not enter itself in the lists under the same rules by which ordinary litigants must abide. It is hedged about by special privileges in such matter. The disadvantage of the individual in this particular does not obtain in a case such as the present, where the government itself seeks such recovery. To invoke such rule in the latter case would be to grant immunity to the state—to facilitate the performance of its functions to the detriment of the United States in the discharge of its duties. The reason of the rule has then ceased to exist, and therefore the rule is inapplicable.

In United States v. Rickert, 188 U. S. 432, 442, 23 Sup. Ct. 478, 482 (47 L. Ed. 532), it was said:

"Counsel for the appellee suggests that the only interest of the United States is to be able at the end of 25 years from the date of allotment to convey the land free from any charge or encumbrance; that if a house upon Indian land were seized and sold for taxes, that would not prevent the United States from conveying the land free from any charge or encumbrance; and that, in such case, the Indians could not claim any breach of contract on the part of the United States. Those suggestions entirely ignore the relation existing between the United States and the Indians. It is not a relation simply of contract, each party to which is capable of guarding his own interests; but the Indians are in a state of dependency and pupilage, entitled to the care and protection of the government. When they shall be let out of that state is for the United States to determine, without interference by the courts or by any state. The government would not adequately discharge its duty to these people if it placed its engagements with them upon the basis merely of contract, and failed to exercise any power it possessed to protect them in the possession of such improvements and personal property as were necessary to the enjoyment of the land held in trust for them. In Choctaw Nation v. United States, 119 U. S. 1, 28, 7 Sup. Ct. 75, 90, 30 L. Ed. 306, 315, this court said: 'The recognized relation between the parties to this controversy, therefore, is that between a superior and an inferior, whereby the latter is placed

under the care and control of the former, and which, while it authorizes the adoption on the part of the United States of such policy as their own public interests may dictate, recognizes, on the other hand, such an interpretation of their acts and promises as justice and reason demand in all cases where power is exerted by the strong over those to whom they owe care and protection. The parties are not on an equal footing, and that inequality is to be made good by the superior justice which looks only to the substance of the right without regard to technical rules framed under a custom of municipal jurisprudence, formulating the rights and obligations of private persons, equally subject to the same laws.' See, also, Minnesota v. Hitchcock, 185 U. S. 373, 396, 22 Sup. Ct. 650, 46 L. Ed. 954, 966.

The foregoing is particularly applicable in the present case and the same "superior justice" should obtain, rather than the technical rules framed to regulate municipal jurisprudence, where private persons alone are concerned. It may be that the individual allottees could maintain suits to recover such taxes wrongfully collected from them. Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 739. But that alone is not sufficient to deny the United States the right to enforce the return of such taxes in a matter touching it so near.

The defendants have not pleaded a defect of parties plaintiff, other than as pointed out. The county should not be left subject to the risk of a second suit by the individual allottees to recover the same money. Protection in this respect may be provided by provision in the decree that the money be paid into court, not to be paid out to the allottees, or their successors in interest, or withdrawn for their benefit, until a proper release of all claims against the county because thereof be executed, and that if, after the expiration of a reasonable time, any of the money remain not accepted under such condition, it should be repaid to the county.

It is presumed that the patents issued in 1911, although the stipulation does not disclose it, were issued under other provisions of law than have been discussed, and that their issuance prior to the expiration of the trust period was not an inadvertence. In such cases no injunction will issue, nor accounting be required for taxes levied or paid after the issue of such second patents.

It is considered that the complainant is only entitled to an accounting in those cases where taxes have been paid by either the Indian allottees, their successors in interest, or persons acting for or in privity with such allottees, or their successors in interest; otherwise, the defense of voluntary payment is held to be good.

Decree may be prepared in accordance with the foregoing, and, if the parties cannot agree to the instances in which the defense of voluntary payment is held to apply, they will be heard further upon the settlement of the decree.