### UNITED STATES v. BENEWAH COUNTY, IDAHO, et al.

(Circuit Court of Appeals, Ninth Circuit. July 2, 1923.)

No. 3985.

Taxation ⬅181—Title in fee held not to pass to Indians, so as to authorize taxation.

Where the Secretary of the Interior declared two allottees to be competent and issued them patents in fee, in exercise of authority conferred by Act May 8, 1906, amending General Allotment Act Feb. 8, 1887, § 6 (Comp. St. §§ 3951, 4203), but the Indians refused to accept

delivery of the patents and several years later they were revoked and canceled, the mere issuance of the patents did not convey the legal title, and the lands were not subject to taxation by state authorities during such years; the Indians holding meanwhile under trust patents and being guaranteed nontaxable land for a period of 25 years, as this right not to be taxed was vested, and could only be divested by due process of law, or on application of the allottee, or with his consent.

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Consolidated suits by the United States against Benewah County, Idaho, and others, and against Kootenai County, Idaho, and others, respectively. Decree for defendants, and the United States appeals. Reversed and remanded, with directions.

E. G. Davis, U. S. Atty., and McKeen F. Morrow, Asst. U. S. Atty., both of Boise, Idaho.

Robert E. McFarland, Pros. Atty., of St. Maries, Idaho, for appellee Benewah Company.

Roger G. Wearne, Pros. Atty., of Cœur d'Alene, Idaho, for appellee Kootenai Company.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The United States, on behalf of two Cœur d'Alene Indians, brought suits to test the validity of taxes levied upon their lands. The causes were consolidated for trial, and were submitted on the pleadings and a stipulation of facts and certified records in the Department of the Interior. The court below dismissed the bills on the merits for want of equity. The lands involved were formerly a part of the Indian reservation established by executive orders of June 14, 1867, and November 8, 1872, for the Cœur d'Alene Indians. The reservation was established in consideration of the cession by the Indians of large and valuable tracts of land formerly possessed by them in Washington, Idaho, and Montana. The cession was made by the treaties of March 26, 1887, and September 9, 1889, ratified by Act of Congress of March 3, 1891, 26 Stat. 991, 1026–1032. On December 16, 1909, trust patents were issued to the two Indians whose rights are here involved. By the trust patents, the United States declared that—

"it does and will hold the land thus allotted (subject to all statutory provisions and restrictions) for the period of twenty-five years in trust for the sole use and benefit of the said Indion and that at the expiration of said period the United States will convey the same by patent to said Indian in fee discharged of said trust and free from all charge and encumbrance whatsoever if said Indian does not die before the expiration of the said trust period."

In the year 1916 the Secretary of the Interior declared these two allottees to be competent Indians and issued to them patents in fee in the exercise of authority conferred by the Act of May 8, 1906, 34 Stat. 182, amending section 6 of the General Allotment Act of February 8, 1887 (Comp. St. §§ 3951, 4203). This was done upon the Secretary's own initiative, and not in response to any application on the

part of the two Indians. The Indians refused to accept the patents, and the same were held for delivery until January 6, 1921, when they were revoked and canceled by the Secretary.

The question here involved is whether or not the lands so allotted to the two Indians were subject to taxation by state authorities for the years 1918, 1919, and 1920. The court below held that the act of the Secretary of the Interior in declaring the Indians competent and issuing to them the patents in fee conveyed the legal title and discharged the trust, notwithstanding that there was no actual physical delivery of the patents, and held that the Indians had no vested right to hold their allotments free from taxation for 25 years, since the trust patents were by their terms "subject to all statutory provisions and restrictions," and one of the statutory provisions was the right reserved to the Secretary under the Act of May 8, 1906, to declare the Indians competent and to issue patents in fee to them; Congress by the Act of June 21, 1906 (34 Stat. 325), having conferred upon the Secretary authority within his discretion to declare an Indian competent and to issue to him a patent in fee without his consent or his acceptance of the patent.

Decision in the court below was controlled by the rule announced in United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167. The court in that case held that, when a patent for a parcel of the public lands has been regularly signed, sealed, countersigned, and duly recorded, the patentee has a right to the possession of the land, and that delivery of the patent is unnecessary to the transfer of title. But the court, while so ruling in regard to patents to lands acquired by settlers under the general land laws of the United States, did not go to the extent of holding that title would pass in the absence of application for and acceptance of the patent by the grantee. The court observed that it was unnecessary to enter into much discussion on that subject because, said the court:

"The acceptance of a deed may be presumed under circumstances far short of what was admitted to exist in this case. * * * The long pursuit of this claim by McBride, his repeated demand for the patent after it had been perfected, and his persistent effort to obtain possession of it are ample proof of his acceptance of the grant of which it is the evidence."

The court referred with approval to an Attorney General's opinion (3 Ops. Atty. Gen. 654) in which it was said:

"The patent was issued by authority and direction of law, and on general principles, where the patentee does not expressly dissent, his assent and acceptance are to be presumed from the beneficial nature of the grant. But it is hardly necessary to resort to such presumptions, because, in this and in all such cases, the acts required to be done by the claimant, and actually done by him in the preparation of his claim for patenting, are equivalent to a positive demand of the patent, and amount to an acceptance of it."

The case at bar differs essentially from United States v. Schurz, in that here there was no application by the Indian for a patent in fee, and there was no acceptance of the patent when issued. On the contrary, there was a distinct refusal to receive it. In view of the fore-

going, and other considerations to be hereafter discussed, we are of the opinion that title in fee did not pass to the Indians by the issuance of the patents.

By section 5 of the treaty with the Cœur d'Alenes of March 26, 1887, it was provided that no part of their reservation "shall ever be sold, occupied, open to white settlement, or otherwise disposed of without the consent of the Indians residing on said reservation." The words "subject to all statutory provisions and restrictions," inserted in the trust patent, are found in the portion thereof in which the United States undertakes to hold the allotted land for the period of 25 years. It does not relate to the clause of the deed which provides for the conveyance of the land to the Indians in fee, discharged of the trust and free from all charge and incumbrance whatsoever. If there is doubt as to the meaning of the trust patent, the doubt should be resolved in favor of the Indians. Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941. In that case the court said:

"Doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith."

There can be no serious question of the authority of Congress to remove restrictions upon the alienation of the lands of allottees with or without the latter's consent. Williams v. Johnson, 239 U. S. 414, 36 Sup. Ct. 150, 60 L. Ed. 358. But to remove restriction upon alienation is a different thing from depriving Indian allottees of the immunity from taxation conferred upon them by their trust patents. The Indians were guaranteed nontaxable land for the period of 25 years after the issuance of the trust patents. In Choate v. Trapp the court gave consideration to the fact that the Indians were offered the allotments on the conditions proposed, and that by accepting the terms and relinquishing their claims they furnished a consideration which was sufficient to entitle them to enforce whatever rights were conferred. One of those rights was exemption from taxation. The court held that the provision that the land should be nontaxable was a property right, which Congress undoubtedly had the power to grant.

So in the present case the right of the Indians to have their allotments held in trust by the United States free from taxation by local authorities for a period of 25 years was a valuable right. Once vested as it was, it could only be divested by due process of law. The provision of the Act of May 8, 1906, 34 Stat. 182, authorizing the Secretary of the Interior, "whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time shall cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed," etc., when read in the light of the principles of law here involved, should, we think, be held to mean that such action by the Secretary can be had only upon the application of the allottee or with his consent. Prior to the date of the act last referred to, allottees had been granted citizenship and fee-simple titles only by special acts of Congress. It is noteworthy that,

in other contemporaneous general provisions for granting Indian allottees patents in fee simple, it was expressly provided that such action might be had "upon application" of the Indians, as in the Act of June 21, 1906, 34 Stat. 353, and the Act of April 21, 1904, 33 Stat. 204.

The decree is reversed, and the cause is remanded, with instructions to enter a decree for the appellant.