**BOARD OF COM'RS OF CADDO COUNTY, OKL., v. UNITED STATES.**

**No. 1437.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 14, 1936.

Amos Stovall, of Anadarko, Okl., for appellant.

Wade H. Loofbourrow, Asst. U. S. Atty., of Oklahoma City, Okl. (William C. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The United States, in its own right and in behalf of an Indian ward, instituted this action against the Board of County Commissioners of Caddo County, Okl., for the recovery of taxes assessed against land which had previously been allotted to the Indian, the taxes being for the years 1918 to 1931, inclusive. Trial by jury was waived and the cause submitted to the court.

The court found that the allottee, a Wichita Indian of one-fourth Indian blood, is a person of more than ordinary intelligence; that she graduated from high school and has the appearance of being an educated and refined person; that a trust patent for the land issued on December 31, 1901; that under its terms the land was to be held in trust for a period of twenty-five years, subject to all restrictions and conditions contained in the applicable acts of Congress; that the patent was filed for record in 1906; that upon the recommendation of the Competency Commission, a patent in fee without restriction issued in August, 1917; that the allottee did not request its issuance and did not accept it after it was issued; that her husband caused it

to be recorded in November, 1917; that the land was thereafter regularly placed upon the tax rolls for the county pursuant to information furnished by the then superintendent of the Indian Agency, all without the approval of the allottee; that the taxes were paid under protest; and that the allottee and her husband executed two oil and gas leases on the land, one in 1927 and the other in 1930. The journal entry contained a general finding that the taxes were unlawfully assessed and collected. Judgment was rendered for the United States, and the Board of Commissioners appealed.

The trust patent issued under the provisions of section 5 of the Act of February 8, 1887, 24 Stat. 389 (25 U.S.C.A. § 348). The trust period fixed was twenty-five years, with the further provision that the President should have power, in his discretion, to extend it. By executive order dated March 18, 1926, the President extended the period ten years. The Act of February 26, 1927, 44 Stat. 1247, 25 U. S.C.A. § 352a, authorized the Secretary of the Interior, in his discretion, to cancel any patent in fee simple issued to an Indian allottee during the original trust period or any extension of it, if such patent was issued without the application or consent of the allottee or his heirs, provided the patentee had not sold or mortgaged any of the land. Acting upon the authority thus conferred, the Secretary made an order on October 31, 1931, canceling the fee patent in question.

The act of Congress, and the terms of the patent issued pursuant to it, created an immunity from taxation under the laws of the state. That immunity was a presently vested right in the allottee which was binding upon the state and its subdivisions and could not be taken from her by the mere issuance of the fee patent during the trust period. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Morrow v. United States (C.C.A.) 243 F. 854; United States v. Board of Commissioners (D.C.) 6 F.Supp. 401; United States v. Board of Commissioners (D.C.) 13 F.Supp. 641.

The parties proceed upon the postulate that the voluntary acceptance of a fee patent during the trust period operates to end the immunity. That may be assumed, without deciding the question. The major point contested in the trial court and argued earnestly here is whether the allottee accepted the fee patent issued in 1917. The general finding contained in the journal entry of judgment constitutes a finding against the Board of Commissioners on that issue, but it is urged that the evidence shows conclusively her acceptance, and therefore the finding is without substantial evidence to support it. The allottee testified that she did not make application for the issuance of the fee patent; that she was requested to do so and refused; that while she was ill, the superintendent of the agency brought it to her home for delivery and that she refused to accept it; that he then placed it on the library table; that she signed a receipt that the agent delivered it to the residence, but that it was not an acceptance; that she and her husband discussed taking it back to the agency, but on account of her illness they failed to do so; and that her husband later caused it to be placed of record. She testified at one place that she knew he was going to have it recorded and at another that she did not know it. The superintendent of the agency at the time testified that he was a member of the Competency Commission; that members of the commission called on the allottee and requested her to sign an application for the patent and that she refused to do so; that thereafter he told her the patent had, in his opinion, been erroneously issued and sooner or later would be canceled as there must be some way to correct the injustice; and that he advised her not to mortgage the land. The unsigned application, to which the witness referred, was exhibited at the trial and it bore a notation that the allottee refused to sign it. The husband of the allottee testified that he caused the patent to be placed of record without her knowledge; that he and his wife did not keep separate accounts; and that the taxes were paid under protest in part with money which he had earned and in part with money which represented rents from the farm. The tax receipts were introduced in evidence. Those for the years 1923 to 1931, inclusive, each contained a notation that payment was made under protest.

The county assessor from 1927 to 1935 testified that during that time, neither the allottee nor her husband lodged with him any objection against placing the land on the tax rolls; that on one occasion the husband stated that due to damage from high water, the value should be reduced; that the witness examined the land and reduced its assessed value; and that while on

the land he talked with allottee and supposed she knew his business there.

The allottee and her husband executed two mineral leases on the land for which they received royalties. One was executed in 1927 and the other in 1930. She understood that the approval of the Secretary of the Interior was essential to the validity of a lease on trust property and she intended to give good leases; but the record is silent as to whether they were executed with the understanding on her part that they would be submitted to the Secretary for approval.

It must be conceded that the signed writing which recited receipt of the patent; the physical retention and recordation of such patent; and the execution of the two mineral leases are facts and circumstances which argue persuasively that the patent was accepted. But the testimony of the allottee and that of the superintendent indicate convincingly that she did not desire it; that she expressly refused to make application for it; and that she voiced her refusal to accept it when it was brought to her home for delivery. The unsigned application with the appended notation was strong corroboration of that testimony. The testimony of the allottee's husband that the taxes were paid under protest was not contradicted and a part of the receipts contained a notation which substantiated that testimony. Manifestly the evidence as a whole presented an issue of fact for the determination of the trial court, as to whether the patent was accepted. It was resolved against the board, and the finding is supported by substantial evidence. It is an inveterate and unbending rule that a finding made in an action at law in which trial by jury has been waived is conclusive on appeal if it is supported by substantial evidence.

▇ The further contention is advanced that since the taxes were paid voluntarily, their return cannot be exacted even though the land was in trust. The argument is

without avail. If payment had not been made, interest and penalties would have been added and the land would have been advertised and sold, all under color of authority asserted to emanate from the statutes of the state. A cloud thus would have been placed upon the title. Payment of taxes wrongfully assessed against land of an Indian which is immune, made in order to avoid these serious disadvantages with some uncertainty of outcome, does not deny the right of the United States to maintain an action for the recovery of the amount. Atchison, Topeka & Santa Fe Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L. Ed. 436, Ann.Cas.1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 32 S.Ct. 236, 56 L.Ed. 510; Ward v. Board of Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; United States v. Chehalis County (D.C.) 217 F. 281.

▇ The remaining questions which merit consideration relate to limitations and laches. It is argued that as the fee patent was issued with authority of law, the United States is not the real party in interest and therefore the statute of limitations and the equitable doctrine of laches apply as though the action were between private suitors. That the United States as guardian of the Indian ward is a party in interest with the right to maintain the action cannot be doubted. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L. Ed. 532; Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622; Dewey County v. United States (C.C.A.) 26 F. (2d) 434, certiorari denied 278 U.S. 649, 49 S.Ct. 94, 73 L.Ed. 561. It is equally certain that state statutes do not bind the United States in a suit which has for its purpose the protection of the interest of an Indian ward, United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; and the doctrine of laches has no application in a case of this kind, United States v. Insley, 130 U.S. 263, 9 S.Ct. 485, 32 L. Ed. 968.

The judgment is affirmed.