**UNITED STATES v. SPAETH, County Auditor, et al.**

No. 18.

District Court, D. Minnesota, Sixth Division.

Sept. 12, 1938.

C. U. Landrum, Sp. Asst. U. S. Atty., of Detroit Lakes, Minn., for the United States.

L. A. Wilson, Co. Atty., of Mahnomen, Minn., for defendants Spaeth, Vondra and Hardy.

Matthias N. Orfield, Deputy Atty. Gen., for the State of Minnesota.

NORDBYE, District Judge.

The question submitted involves the right of the taxing authorities to tax certain so-called adult mixed-blood Indian lands in Mahnomen County. The United States at various times after the passage of the General Allotment Act of February 8, 1887 (24 Stat. 388), and the so-called Nelson Act of January 14, 1889 (25 Stat. 642) allotted the several parcels of land referred to in the stipulation to certain

adult mixed-blood Chippewa Indians in the White Earth Indian Reservation in this state. The patents issued were the so-called trust patents whereby the land for a period of twenty-five years was held in trust by the United States for, and the sole use and benefit of, the said Indians, or in case of their decease, for the sole use of their heirs "according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, That the President of the United States may in his discretion extend the period." 25 U.S.C.A. § 348. That this trust patent created a vested right in the allottee to receive the land at the end of twenty-five years free from state and local taxation has been definitely settled. Morrow v. United States, 8 Cir., 243 F. 854; United States v. Benewah County, 9 Cir., 290 F. 628; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941. The cases referred to are also authority for the view that this vested right could not be altered against the Indians' will, and that the passage of the Clapp Act, June 21, 1906 (34 Stat. 353), which provided for the removal of all restrictions as to sale, encumbrance, or taxation of allotments within the White Earth Indian Reservation held by adult mixed-blood Indians, and which further provided that the trust deeds were sufficient for such allottee or allottees to pass title in fee simple, could not disturb this vested right to be free from taxation during the twenty-five year period unless the Indian willingly changed his status by acceptance of the rights and privileges contained in said amendment. The pertinent portion of the Clapp Amendment reads:

"That all restrictions as to sale, incumbrance, or taxation for allotments within the White Earth Reservation in the State of Minnesota, now or hereafter held by adult mixed-blood Indians, are hereby removed, and the trust deeds heretofore or hereafter executed by the Department for such allotments are hereby declared to pass the title in fee simple, or such mixed bloods upon application shall be entitled to receive a patent in fee simple for such allotments; and as to full bloods, said restrictions shall be removed when the Secretary of the Interior is satisfied that said adult full-blood Indians are competent to handle their own affairs, and in such case the Secretary of the Interior shall issue to such Indian allottee a patent in fee simple upon application." 34 Stat. 353.

Defendants herein concede that this vested right could not be altered during the twenty-five year period against the will of the Indian, and recognize that, in all of the allotments now under consideration, the tracts were not taxable during the twenty-five year period except certain tracts referred to as "A" and "H", where it appears that the allottees have died and the heirs have initiated proceedings to probate the estate of the allottees in the Probate Court. It is contended that the probate proceedings are inconsistent with the trust status. In "A", the trust patent was issued on December 30, 1902. The final decree of distribution was filed on September 20, 1909, wherein it appears that the allottee died February 8, 1907, and his surviving heirs are his son and surviving spouse, apparently both adult mixed bloods. In "H", the trust patent was issued on February 6, 1908. The decedent died before the trust deed was filed. The records do not indicate that any distribution of the property has been made, though the decree of the Probate Court finds that the decedent died seized of the land in question. It will be noted that the trust deeds specifically provide that the Government agrees to hold the land in trust for the allotted period for the use of the allottee, or in case of his decease, for the sole use of his heirs, according to the laws of the state or territory where the land is located. A proceeding in Probate Court to determine the heirship, so as to ascertain the heirs for whom the property is held in trust during the remainder of the trust period, manifestly cannot be construed as an act or conduct reflecting an intention to accept or exercise the powers offered in the Clapp Amendment. It is obviously in harmony and consistent with an intention to continue the trust with its vested rights for the benefit of the heirs as provided in the trust patent.

There is only one question of any moment that is presented. The twenty-five year period in these trust patents expired at various dates between the years 1927 and 1936. The Government contends that,

by reason of an Executive Order dated December 7, 1920, issued by President Wilson, the so-called trust period with exemption from taxation has been extended for a further period of twenty-five years from the date on which the trust deed otherwise would have expired. This Executive Order reads:

"Executive Order

"It is hereby ordered under authority found in the Act of June twenty-first, nineteen hundred and six (thirty-fourth statutes at large, pages three hundred and twenty-five and three hundred and twenty-six), that the trust or other period of restriction against alienation contained in any patent heretofore issued to any Indian for any lands on the public domain be, and the same is hereby extended for a further period of twenty-five years from the date on which any such trust would otherwise expire."

"Woodrow Wilson

"The White House,
  "7 December, 1920.

"(No. 3365)"

It was, according to its terms, issued under authority of 34 Stat. 325, Chap. 3504, the pertinent portion of which reads (p. 326): "That prior to the expiration of the trust period of any Indian allottee to whom a trust or other patent containing restrictions upon alienation has been or shall be issued under any law or treaty the President may in his discretion continue such restrictions on alienation for such period as he may deem best: Provided, however, That this shall not apply to lands in the Indian Territory."

■ It is clear that Congress vested authority in the President to extend the so-called trust period. This authority not only appears in the Clapp Amendment (34 Stat. 325), but also in the Act of February 8, 1887, Section 5. The query is, Did the Executive Order pertain to the allotted lands of adult mixed-blood Indians in the White Earth Indian Reservation in view of the Clapp Amendment? That Congress had the authority to remove the restrictions upon the alienation of the lands of the allottees under the trust patents before the expiration of the twenty-five year period cannot be questioned. The determination of the allottees' right to exercise the power of alienation must rest with the legislative authority. United States v. Waller, 243 U.S. 452, 37 S.Ct.

430, 61 L.Ed. 843; United States v. Benewah County, supra.

In the Waller Case, the Supreme Court was considering the force of the Clapp Amendment with reference to lands in the White Earth Indian Reservation, and stated (at page 462, 37 S.Ct. at page 433):

"The act deals with two classes: First, adult mixed-blood Indians, as to whom all restrictions as to sale or encumbrance are removed and the trust deeds declared to pass title in fee simple, or, upon application, such mixed bloods are to receive fee simple patents for their allotments; and, second, full-blood Indians, as to whom the restrictions are to continue until the Secretary of the Interior is satisfied that such Indians 'are competent to handle their own affairs,' at which time they are to receive patents in fee simple. This distinction between the qualifications of adult mixed and full-blood Indians is one which Congress has not infrequently applied. Marchie Tiger v. Western Investment Co., 221 U.S. 286, 306, 308, 31 S.Ct. 578, 55 L.Ed. 738, 745, 746; United States v. First National Bank, supra [234 U.S. 245], at page 260 [34 S.Ct. 846, 58 L.Ed. 1298].

"The act thus evidences a legislative judgment that adult mixed-blood Indians are, in the respects dealt with in the act, capable of managing their own affairs, and for that reason they are given full power and authority to dispose of allotted lands. This may be a mistake of judgment as to some cases, and if the allegations of the bill set forth in the certificate in this case are true, it is quite evident that the Indians here involved were incapable of making an intelligent disposition of their lands. But Congress dealt with general conditions, and with these classes of Indians as a whole, and, with authority over the subject, has given to adult mixed-blood Indians the full right to dispose of the lands in question. It is not for the courts to question this legislative judgment."

■ The removal of the restriction of alienation, however, does not necessarily interfere with or imperil the immunity from taxation. That is a vested right. But while it was necessary to obtain the Indian's consent to divest him of the guaranteed non-taxable land during the twenty-five year period, it was not necessary to obtain his consent to clothe him with authority to alienate his land. In some instances, it may have been a distinct bene-

fit to the Indians to be able to give fee title. Presumably, Congress determined that adult mixed-blood Indians on the White Earth Indian Reservation were capable of self-management so far as their lands were concerned. That the Government recognized the plain intendment of the Clapp Amendment is reflected by the action of the Department in issuing fee patents to the adult mixed-blood White Earth Indians. While in no instance was a fee title patent requested by these Indians, it may be noted that, in all of the allotments referred to in the stipulation, fee title patents have been issued by the Government after the passage of the Clapp Amendment to all allottees but two. It is not probable that the issuance of these fee patents were considered essential in order to give the Indians unrestricted fee title, but they were issued because it was apparently believed that fee title now existed and that a fee title patent would be more convenient for the Indian and his vendees.

■ It must be presumed that the Clapp Amendment and its clear intendment was known to the Executive when the order of December 7, 1920, was issued. The lands in question were, by reason of that amendment, subject to no alienation restrictions. A title tantamount to fee by reason of legislative enactment existed in the allottee. The authority of the President to issue the Executive Order expressly limits the power to continue the restrictions in alienation. The President's order makes no reference to continued immunity from charges and encumbrances. If, therefore, it appears that there was no restriction against alienation as against lands held by the adult White Earth mixed-blood Indians, does it not necessarily follow that the Executive Order did not intend to extend that which had already terminated?

Reference is made to the trust patents which contain the reservation that the President of the United States may extend the period during which the Government holds the property subject to all restrictions and conditions of the fifth section of the statute enacted February 8, 1887 (24 Stat. 388, 389). No doubt exists as to the authority of the President to extend the trust period, but, in the instant situation, long before the Executive Order of December 7, 1920, Congress released the allotted lands from all restrictions of alienation and the restriction that any conveyance affecting the land during the twenty-five year period "shall be absolutely null and void" no longer applied. Congress did not agree with the Indians in the treaties or elsewhere to extend the twenty-five year period. No obligation rested upon Congress or the President to do so. The Act specifically provides that the President in his discretion may take such action. Obviously, the President did not intend to extend something that did not exist.

■ The stipulated facts include an Executive Order of President Coolidge dated May 5, 1927. This order was issued under authority contained in Section 5 of the Act of February 8, 1887 (24 Stat. 388, 389). It purports to extend the trust period on allotments on the White Earth Reservation of Minnesota, the title to which has not passed out of the United States, and which would otherwise expire during the calendar year 1927 for a further period of ten years, except in certain specific cases. Whatever effect this order may have must be limited to the full bloods, because the Clapp Amendment divested the United States of any title to lands of the adult mixed bloods. The whole and complete title by virtue of that amendment passed from the United States to the Indians. Clearly, therefore, the Executive Order had no effect on the lands in question—the Government admits as much.

■ The twenty-five year period has now expired. The contract with the Indians to deliver their fee title at the expiration of this period "free of all charge and incumbrance whatsoever" has been fulfilled. The assurance given to these Indians when the Nelson Act and General Allotment Act were discussed with them that their lands would not be taxed for twenty-five years has been made good. The vested right has terminated. The lands are not only free from any restriction of alienation, but they must now bear their fair share of the taxable burden. It is the Court's view, therefore, that all of the lands referred to in the stipulation are exempt from taxation for a period of twenty-five years from the date of the trust patent and no longer.

Counsel for the complainant may present findings of fact and conclusions of law in harmony herewith. An exception may be reserved for each party.