**MAHNOMEN COUNTY v. UNITED STATES.**

**UNITED STATES v. STATE OF MINNESOTA et al.**

Nos. 12340, 12376.

Circuit Court of Appeals, Eighth Circuit.

Dec. 7, 1942.

L. A. Wilson, Co. Atty., of Mahnomen, Minn., and George B. Sjoselius, Asst. Atty. Gen. (J. A. A. Burnquist, Atty. Gen., on the brief), for Mahnomen County and State of Minnesota and others.

Vernon L. Wilkinson, Atty., Department of Justice (Norman M. Littell, Asst. Atty. Gen., and C. U. Landrum, Sp. Asst. to U. S. Atty., of Detroit Lakes, Minn., on the brief), for United States of America.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This suit was brought by the United States to carry out a trust obligation undertaken by it in respect to a tract of land which it allotted in severalty and conveyed by trust patent to Isabelle Garden, who is an adult female mixed-blood Chippewa Indian of the White Earth Reservation, in Mahnomen County, Minnesota. One of the obligations assumed by the United States under the terms of its trust was that it would turn over the land to the Indian at the termination of the twenty-five year trust period "free of all charge or incumbrance", and the gist of the complaint filed by the United States was that the defendant Mahnomen County prevented the United States from completely discharging its trust by wrongfully assessing taxes against the land during the period of the trust and collecting the same from the Indian. It asked for judgment against the county for the amount of the tax money so obtained, and interest. The trial court awarded judgment as prayed for the tax money collected by the county after the period had expired.

The county appeals, claiming that the United States was not entitled to any recovery; and the United States appeals,

claiming that recovery should have been awarded for all the tax money collected by the county from the Indian.

It appears that the trust patent describing the land as parcel 7 was issued December 13, 1902, pursuant to the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq., and the Nelson Act of 1889, 25 Stat. 642, and provided that the United States would hold the land in trust for a period of twenty five years, and then would convey it to the allotee in fee "discharged of said trust and free of all charge or incumbrance whatsoever." 25 U.S.C.A. § 348. Thereafter the two Clapp Amendments of 1906, 34 Stat. 353, and 1907, 34 Stat. 1034, were passed, the relevant provisions of the first, as amended by the second, reading as follows: "That all restrictions as to the sale, incumbrance, or taxation for allotments within the White Earth Reservation in the State of Minnesota, heretofore or hereafter held by adult mixed-blood Indians, are hereby removed, and the trust deeds heretofore or hereafter executed by the Department for such allotments are hereby declared to pass the title in fee simple or such mixed bloods upon application shall be entitled to receive a patent in fee simple for such allotments."

Isabelle Garden became an adult in 1911 and entitled under the foregoing provisions to apply for a patent in fee simple for her allotment, but she made no such application, and the twenty-five year period specified in her trust patent expired in 1928.

Beginning in 1911 the county assessed taxes against the land each year and the Indian paid the same currently except that the taxes for 1922 and 1927 were permitted to become delinquent and the Indian did not redeem until June 30, 1936, when she purchased Tax Assignment Certificates therefor, as then permitted by the Minnesota law. This suit was begun by the United States in 1940.

 It has been settled by long course of adjudication that state and county authorities may not lawfully tax Indian lands while the United States holds them in trust under promise to convey to the Indian at the expiration of the trust period free of incumbrance. The federal power is supreme in this field and no state power of taxation can lawfully be exercised to create liens upon the land which the United States has undertaken to keep and convey free of liens. In re Kansas Indians, 72 U.S. 737, 5 Wall. 737, 18 L.Ed. 667; In re New York Indians, 72 U.S. 761, 5 Wall. 761, 18 L.Ed. 708; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Board of Commissioners of County of Jackson, Kansas, v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; McCurdy v. United States, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801; Carpenter v. Shaw, 280 U.S. 363, 50 S. Ct. 121, 74 L.Ed. 478; Morrow v. United States, 8 Cir., 243 F. 854; United States v. Benewah County, Idaho, 9 Cir., 290 F. 628; United States v. Nez Perce County, Idaho, 9 Cir., 95 F.2d 232; United States v. Lewis County, Idaho, 9 Cir., 95 F.2d 236; Board of Commissioners of Caddo County, Oklahoma, v. United States, 10 Cir., 87 F.2d 55. It is also settled that Congress itself may not by legislative fiat deprive the Indian of the tax exemption inuring to him under the obligation to convey to him free of incumbrance. It is held that he has a vested right to the exemption. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; United States v. Benewah County, Idaho, 9 Cir., 290 F. 628; Morrow v. United States, 8 Cir., 243 F. 854; United States v. Spaeth, D.C., 24 F. Supp. 465; Glacier County, Montana, v. United States, 9 Cir., 99 F.2d 733. It appears that in 1919 a patent in fee for the lands in question was issued to the Indian Isabelle Garden, but the same was not applied for by her and so was not issued in conformity with, or as authorized by the provisions of the Clapp Amendments, supra. The United States therefore remained obligated to perform the trust defined in the original patent, and the county recognizing such "sovereign power and authority over * * * parcel 7 * * * for the period of twenty-five years from and after the date of issuance of the trust patents" stipulated in the court below that "said land [parcel 7] was not legally taxable prior to the year 1928." In the strict and diligent performance of its trust, the United States should have applied to its courts for decree or decrees avoiding the apparent liens of taxes illegally assessed by the county against the land each year from 1911 up to 1928, or for injunction, but time does not run against the sovereign and its right to resort to its courts in aid of the performance of governmental obligation is not restricted to any particu-

lar form of action. Recovery for the Indian of the money obtained by taxation illegally imposed also accomplishes the performance by the government of its trust and it is well settled that that remedy is equally available to it in its courts. Board of Commissioners of County of Jackson, Kansas, v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Bryan County, Oklahoma, v. United States, 10 Cir., 123 F.2d 782; United States v. Chehalis County, D.C., 217 F. 281; Board of Commissioners of Caddo County, Oklahoma, v. United States, 10 Cir., 87 F.2d 55; United States v. Nez Perce County, Idaho, 9 Cir., 95 F.2d 236; Glacier County, Montana, v. United States, 9 Cir., 99 F.2d 733.

■ The county appears not to question the law or the right of the government to sue in its courts as above stated. It contends that a suit which Isabelle Garden brought against it in the state court in 1923 to recover taxes wrongfully assessed against her land and paid by her ought to be deemed a bar to this action. That action was adjudicated against her on demurrer to her petition but the United States was not a party to the action. But the interest which the United States has to see to it that its trust obligation is performed is invested in it as a sovereign and that interest cannot be impaired by a judgment in any proceeding to which it was not a party. The state judgment was therefore not a bar to this action. Bowling and Miami Investment Co. v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080; United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023; Bryan County, Oklahoma, v. United States, 10 Cir., 123 F.2d 782. The county also contends that it should be held that the tax payments which it obtained from Isabelle Garden were voluntary payments and it is presented that under Minnesota law the taxpayer may not recover such voluntary payments of taxes by action in the courts of Minnesota. In this connection stress is laid upon the extent to which the Clapp Amendments operated to emancipate the adult mixed-blood Indians to whom it related, and it is argued that they became in effect sui juris and therefore subject to all the consequences of their acts applicable to others in the state. If others are deemed to waive all objection to illegal taxes by voluntarily paying the same, so it is said should the Indians.

■ The argument would not be considered without force if the case was of first impression. In the matter of the alienation of lands conveyed by trust patent it is settled that if the Indian acts to apply for fee patent before expiration of the trust period and his application is granted and he obtains the fee and alienates it, then the obligation of the government is deemed to have been discharged. United States v. Waller, 243 U.S. 452, 37 S.Ct. 430, 61 L.Ed. 843; Williams v. Johnson, 239 U.S. 414, 36 S.Ct. 150, 60 L.Ed. 358; United States v. Spaeth, D.C., 24 F.Supp. 465. But in the matter of the exemption of the land from taxation the course of judicial decision has consistently denied the power of the states or their agencies to impair the obligation of the United States to perform that provision of its trust agreement by which it has undertaken to make its conveyance free of such incumbrance. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Board of Commissioners of Caddo County, Oklahoma, v. United States, 10 Cir., 87 F.2d 55; Morrow v. United States, 8 Cir., 243 F. 854; Glacier County, Montana, v. United States, 9 Cir., 99 F.2d 733.

■ The trial court erroneously took the position that the United States could not recover taxes paid after the expiration of the trust period upon levies made prior to that date for the reason that those payments were voluntarily made by an emancipated Indian. The duty of the United States to see that its guaranty of tax immunity is respected was a continuing one. The fact that the taxes wrongfully levied between 1922 and 1927 were not discharged until 1936 is immaterial. Any taxes which were assessed prior to 1928 and which the allotee had to discharge then or thereafter in order to obtain an unencumbered title were impingements upon the allotee's vested tax exemption. The guaranty which he held of an unencumbered title in fee from the United States devolved upon that government the duty to remove that impingement. Once the duty was laid upon the government to preserve the land intact that duty must remain until performance. It was an obligation of protection against acts done within the designated period, and not merely of assistance within it.

We therefore order that the judgment of the District Court be affirmed in so far as it provides for recovery of taxes

paid for the years 1911 to 1921, and be reversed in so far as it denies recovery of taxes paid for the years 1922 to 1925.[1]

---

[1] Taxes for 1922 to 1925 were discharged by the purchase in 1936 of Tax Assignment Certificate No. 76. Taxes for the years 1926 to 1934 were similarly discharged in 1936 by the purchase of Tax Assignment Certificate No. 232. Since her allotment "was not legally taxable prior to the year 1928", the allotee should not have been required to pay the taxes for 1926 and 1927. But inasmuch as the taxes for 1928 to 1934 (which she was legally required to pay) exceeded the amount she actually paid for Tax Assignment Certificate No. 232 covering the years from 1926 to 1934, the United States makes no claim for any refund for the years 1926 and 1927.